IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GAIL HELM and SCOTT HELM, | § | |
| | § | No. 146, 2014 |
| Plaintiffs Below, | § | |
| Appellants, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware, in and |
| 206 MASSACHUSETTTS | § | for Kent County, |
| AVENUE, LLC, and GALLO | § | |
| REALTY, INC. | § | C.A. No. K12C-03-014 RBY |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: October 29, 2014
Decided: December 19, 2014

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices.

Upon appeal from Superior Court. **REVERSED** and **REMANDED**.

Patrick C. Gallagher, Esquire, Curley & Benton, LLC, Dover, Delaware, Attorney for Gail Helm and Scott Helm, Plaintiffs Below, Appellants.

Susan L. Hauske, Esquire and Robert D. Cecil, Jr., Esquire (*argued*), Tybout, Redfearn & Pell, Wilmington, Delaware, Attorneys for 206 Massachusetts Avenue LLC, Defendant Below, Appellee.

James D. Griffin, Esquire, Griffin & Hackett, P.A., Georgetown, Delaware, Attorney for Gallo Realty, Inc., Defendant Below, Appellee.

**HOLLAND**, Justice:

This appeal relates to a personal injury action that was filed in the Superior Court by the Plaintiffs Below/Appellants, Gail Helm and Scott Helm. The Appellants rented a beach house located at 206 Massachusetts Avenue, Lewes, Delaware (the "Property"), for a week in July 2010. On July 10, 2010, as Gail was descending the stairs from the second floor to the first floor of the Property, she fell and sustained injuries. In their Complaint, Gail sought to recover damages based on claims of negligence and breach of contract against both Gallo Realty, Inc., the agent who rented the Property to the Helms, and 206 Massachusetts Avenue, LLC, the owner of the Property. Scott Helm asserted an additional claim for loss of consortium. The Superior Court granted both of the Defendants' Motions for Summary Judgment.

### Superior Court Decisions

The Appellee Gallo Realty, Inc. ("Gallo") filed a Motion for Summary Judgment based on two grounds. First, Gallo asserted that it was not exercising control over the Property, but was merely acting as the agent for the Property owner. Second, Gallo argued that the indemnification provision of the rental contract shielded it from liability. The Appellee 206 Massachusetts Avenue, LLC (the "LLC"), the Property owner, also filed a Motion for Summary Judgment. It argued that Gail primarily assumed the risk of her fall based on her deposition testimony and was more than fifty percent negligent as a matter of law. It also

2

argued that the indemnification clause of the rental contract shielded the LLC from liability.

Based on the parties' submissions and oral arguments, the Superior Court granted both Defendants' Motions for Summary Judgment in separate decisions dated December 12, 2013.[1] The Superior Court held that Gail was more than fifty percent negligent in causing her injuries as a matter of law and alternatively, that she primarily assumed the risk of her fall.[2] The Appellants filed a Motion for Reargument asserting that the Superior Court granted summary judgment in favor of Gallo despite the fact that it never raised the issue of primary assumption of risk or comparative negligence; that there remained material facts in dispute; that the Superior Court misapplied precedent in determining that Gail was more negligent than the LLC and/or Gallo as a matter of law; and that the Superior Court erroneously dismissed Count II of Appellants' Complaint regarding the alleged breach of contract.

The Superior Court denied the Motion for Reargument.[3] The Superior Court ruled that, despite the fact that Gallo never raised the issues of primary assumption

---

[1] Gail Helm and Scott Helm v. 206 Massachusetts Avenue, LLC, and Gallo Realty, Inc., 2013 WL 6591544 (Del. Super. Ct. Dec. 12, 2013); Gail Helm and Scott Helm v. 206 Massachusetts Avenue, LLC, and Gallo Realty, Inc., 2013 WL 6592203 (Del. Super. Ct. Dec. 12, 2013) (collectively *"Helm I"*).
[2] *Helm I* at 6-7.
[3] Gail Helm and Scott Helm v. 206 Massachusetts Avenue, LLC, and Gallo Realty, Inc., C.A. No. K12C-03-014 (RBY), Order Upon Consideration of Plaintiffs' Motion for Reargument (Del. Super. Ct. Feb. 20, 2014) (hereinafter *"Helm II"*).

3

of the risk or comparative negligence, under Superior Court Rule 56, the court was permitted to look at pleadings, depositions, answers to interrogatories, and admission on file to determine whether Gallo was entitled to judgment as a matter of law.[4] The Superior Court also noted that at oral argument on the Motion for Summary Judgment, Gallo's counsel argued that Gail caused her own injuries without objection from Appellants. In denying the Motion for Reargument, the Superior Court summarily dismissed the Appellants' breach of contract claim because it held that it was nothing more than an alternative count to recover for Gail's personal injuries.[5]

### *Issues On Appeal*

The Appellants raise three issues in this appeal. First, they contend that the Superior Court erred in granting the Defendants' Summary Judgment Motions on the issue of primary assumption of risk and comparative negligence as a matter of law. Second, the Appellants submit that the Superior Court erred in holding that the indemnification clause provision in the lease protected either Defendant from liability. Third, the Appellants argue that the Superior Court erred in granting summary judgment to the Defendants on the breach of contract claim.

We have determined that the Superior Court erroneously applied both the doctrine of primary assumption of risk and the doctrine of comparative negligence

---

[4] *Helm II* at pp. 3-4.
[5] *Helm II* at pp. 4-5.

as a matter of law. The record reflects that the Superior Court never specifically based its decision on the indemnification clause. The Superior Court's initial ruling in favor of both Defendants was only on the negligence claims.[6] Therefore, because the indemnification clause references by the Superior Court were *dicta*, we do not address that issue in this appeal.

In denying the Appellants' Motion for Reargument, the Supreme Court characterized the contract claim "as an alternative theory to recover for personal injuries suffered as a result of [Gail's] own negligence." The record reflects that the Superior Court's dismissive rulings on the Appellants' contract claim were cursory and inextricably intertwined with its erroneous rulings on the negligence claims. Accordingly, the contract claim will not be addressed in this appeal. All of the judgments of the Superior Court must be reversed.

### *Facts*

On March 4, 2010, Plaintiff Gail Helm signed a Residential Lodging Agreement with Gallo to rent the Property located at 206 Massachusetts Avenue, Lewes, Delaware for one week starting on July 10, 2010. On the afternoon/early evening of July 10, 2010, the Helms arrived at the Property. Scott unloaded their

---

[6] In *Helm II*, the Superior Court stated that it granted both Defendants' Motions for Summary Judgment "because it determined that [Gail's] assumption of the risk was greater than that of either Defendant."

5

belongings from the car while Gail visited with her family who had arrived at the Property earlier in the day.

Gail learned from her family, however, that the Property was not clean when her other family members had arrived. The floors were dirty and the house smelled of urine. Gail investigated and discovered that the rugs in the upstairs bathrooms were the source of the smell. She took the rugs down the stairs at approximately 8:00 p.m. while it was still daylight and put the rugs in the washing machine located on the first floor. She then went back upstairs.

Between 11:00 p.m. and midnight, Gail went to take the rugs out of the washer and place them in the dryer. While walking downstairs, she attempted to turn on the light in the foyer at the bottom of the stairs but there was no light switch at the top of the stairs to control the light in the foyer on the first floor at the bottom of the steps. The second floor light was angled away from the bottom of the stairway and therefore it was very dark at the bottom of the steps. None of her relatives were on the first floor.

Gail noticed that the stairwell was very dark and acknowledged at her deposition that as she stood at the top of the stairs, before descending, she "definitely saw a safety issue." She acknowledged that she "knew it was unsafe when [she] looked down [the stairs]." Nevertheless, she thought she could handle it. She did not ask anyone for assistance. She also claimed that there were no

flashlights provided in the rental unit, but admitted that no one ever looked for one until after she fell.

As she descended, Gail recalled that the banister on the right side of the stairs curled near the bottom of the steps, so she moved to the right side of the stairs and used the banister to guide her down the remainder of the stairs. When she began to feel the banister curl, she cautiously felt with her left floor to make sure that she was on the last step. Believing she was at the bottom, she put her weight down on her foot, but it was not the last step and her left foot rolled over the edge of the stair. She attempted to grab the handrail, but she could not grasp it, allegedly due to its shape and size.

Gail then fell down the few remaining stairs and into the wall at the bottom of the stairs. Her family heard her fall and came to see what happened. She was taken by ambulance to Beebe Medical Center and was ultimately diagnosed with three broken bones in her left foot and a Lisfranc injury.

### *Assumption of Risk*
### *Primary and Secondary*

In Delaware, assumption of risk has historically been divided into two categories: "primary assumption of risk" (where the plaintiff expressly relieves the defendant from all legal duty) and "secondary implied assumption of risk" (where

the plaintiff deliberately and unreasonably chooses to encounter a risk created by another's breach of duty).[7]

When a defendant invokes the affirmative defense of primary assumption of risk, the trial judge must evaluate the viability of the defense as part of its duty analysis because primary assumption of risk "obviates the duty owed by the defendant."[8] A finding by the trial judge that a plaintiff expressly assumed a risk in a manner that would implicate primary assumption of risk constitutes a finding that the defendant owed no duty to the plaintiff.[9] If the defendant establishes that it owed no duty to the plaintiff, it is entitled to summary judgment as a matter of law.[10]

The distinction between the doctrines of primary assumption of risk and secondary assumption of risk has not always been legally significant. Prior to 1984, Delaware applied traditional common law contributory negligent standards and barred a plaintiff's recovery if the defendant established any contributory negligence on the part of the plaintiff.[11] Under traditional notions of contributory negligence, any assumption of risk by the plaintiff would operate to bar his or her

---

[7] *Koutoufaris v. Dick*, 604 A.2d 390, 397 (Del. 1992) (*citing Bib v. Merlonghi*, 252 A.2d 548, 550 (Del. 1969)).
[8] *Storm v. NSL Rockland Place, LLC*, 898 A.2d 874, 880 (Del. Super. Ct. 2005) (quoting *Croom v. Pressley*, 1994 WL 466013, at *5 (Del. Super. Ct. Jul. 29, 1994)).
[9] *Id.*
[10] *Id.*
[11] *Id.*

recovery, regardless of whether it was "primary" or "secondary."[12] In *Bib v. Merlonghi*,[13] a traditional common law negligence action, this Court stated, "[w]e think it makes little difference in the present case whether the defense is called assumption of risk or contributory negligence or given no title at all; this is one of those cases whether the two theories overlap.[14]

### *Assumption of Risk Comparative Negligence Statute*

In 1984, Delaware enacted a modified comparative negligence statute, 10 *Del.C.* § 8132. That statute provides:

> In all actions brought to recover damages for negligence which results in death or injury to person or property, the fact that the plaintiff may have been contributorily negligent shall not bar a recovery by plaintiff or his legal representative where such negligence was not greater than the negligence of the defendant or the combined negligence of all defendants against whom recovery is sought, but any damages awarded shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

Pursuant to Delaware's modified comparative negligence statute, if the plaintiff's contributory negligence is 50% or less, the plaintiff is permitted to recover, although the recovery is reduced proportionally.[15] If the plaintiff's

---

[12] *Id.; see Koutoufaris*, 604 A.2d at 397.
[13] 252 A.2d 548 (Del. 1969).
[14] *Id.* at 550; *see also Koutoufaris*, 604 A.2d at 397.
[15] *Culver v. Bennett*, 588 A.2d 1094, 1098 (Del. 1991).

contributory negligence is 51% or greater, however, it is an absolute bar to recovery according to the Delaware statute.[16]

Delaware's modified comparative negligence statute requires a jury to apportion the degree of liability between the parties to a negligence action in terms of percentages.[17] As an initial matter, liability in negligence will first depend upon whether the defendant was under a legal obligation, or duty, "to protect the plaintiff from the risk of harm which caused his injuries."[18] The determination of whether a duty exists is a question of law to be decided by the trial judge.[19] If the trial judge concludes that the defendant owed no duty of care to the plaintiff at the time his or her injuries were sustained, the defendant is entitled to summary judgment as a matter of law.[20]

In *Bib*, this Court recognized that it was not necessary in a common law negligence action to distinguish between primary and secondary assumption of risk because either constituted an absolute bar to recovery.[21] With the General Assembly's enactment of Delaware's comparative negligence statute, however, the

---

[16] *Id.*
[17] *Id.*
[18] *Fritz v. Yeager*, 790 A.2d 469, 471 (Del. 2002).
[19] *Id.*; *see also Butler v. Newark Country Club, Inc.*, 2005 WL 2158637, at *3 (Del. Super. Ct. Aug. 29, 2005) ("The existence of a duty is a pure question of law appropriate for summary judgment."); *Shepard v. Reinoehl*, 830 A.2d 1235, 1238 (Del. Super. Ct. 2002) ("Whether or not a duty of care exists . . . is a question of law to be decided by the Court.").
[20] *Kananen v. Alfred I. DuPont Inst. of the Nemours Found.*, 796 A.2d 1, 7 (Del. Super. Ct. 2000).
[21] *See Bib*, 252 A.2d at 550.

distinction between the concepts became important.[22]  In *Fell v. Zimath*,[23] the Superior Court addressed the distinction between primary and secondary assumption of risk in the context of Delaware's comparative negligence statute. Relying upon our holding in *Bib* and adopting the definitions set forth in Prosser and Keeton on the Law of Torts, the Superior Court explained that primary assumption of risk involves the express consent to relieve the defendant of any legal duty of care, and secondary assumption of risk consists of voluntarily encountering a known risk which is out of proportion to the advantage gained.[24]  In *Koutoufaris*, this Court held that the explanation of the distinction between primary and secondary assumption of risk in *Fell* was a correct statement of Delaware law.[25]

Following the enactment of Delaware's comparative negligence statute, the distinction between primary and secondary assumption of risk became meaningful. Delaware courts have been called upon frequently to address the parameters of each of those concepts.  It is now settled in Delaware that primary assumption of risk is implicated when the plaintiff expressly consents "to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a

---

[22] *Koutoufaris*, 604 A.2d at 398.
[23] *Fell v. Zimath*, 575 A.2d 267 (Del. Super. Ct. 1989).
[24] *Koutoufaris*, 604 A.2d at 397-98 (citing PROSSER AND KEETON ON THE LAW OF TORTS § 68, at 48 (15th ed. 1984)).
[25] *Id.*

11

known risk arising from what the defendant is to do or leave undone.[26] The effect of a successful primary assumption of risk defense "is that the defendant is relieved of legal duty to the plaintiff; and being under no legal duty, he or she cannot be charged with negligence."[27] Thus, where the assumption of risk is of the primary type, *i.e.*, a bargained-for, agreed-upon shifting of the risk of harm, a plaintiff's conduct will constitute a complete bar to recover, as a matter of law, under Delaware's comparative negligence statute.[28]

Conversely, secondary assumption of risk is generally implicated where "the plaintiff's conduct in encountering a known risk may itself be unreasonable, because the danger is out of proportion to the advantage which he is seeking to obtain[.]"[29] The defense does not, however, relieve a defendant of any legal duty to a plaintiff. The conduct of the plaintiff is instead considered a form of comparative negligence and recovery is dependent upon the relative fault a fact-finder attributes to him or her.[30] Accordingly, it is now accepted in Delaware that

---

[26] *Fell v. Zimath*, 575 A.2d 267-68 (Del. Super. Ct. 1989) (quoting PROSSER & KEETON ON TORTS, §68 at 481 15th ed. 1984)); 57B AM. JUR. 2D *Negligence* § 1010 (2004) ("Primary assumption of risk . . . relieves the defendant of any obligation to exercise care for the injured person's protection, including situations where an injured person, having knowledge of a hazard, continued voluntarily to encounter it.").
[27] *Fell*, 575 A.2d at 267, 268.
[28] *Koutoufaris*, 604 A.2d at 398.
[29] *Fell*, 575 A.2d at 268.
[30] *Storm*, 898 A.2d at 883.

the concept of secondary assumption of risk is completely subsumed by the principles of comparative negligence.[31]

### *Primary Risk Assumption*

The defense of primary assumption of risk is most often applied in cases of sports-related activities that "involv[e] physical skill and challenges posing significant risk of injury to participants in such activities, and as to which the absence of such a defense would chill vigorous participation in the sporting activity and have a deleterious effect on the nature of the sport as a whole."[32] In *Storm v. NSL Rockland Place, LLC*, the Superior Court listed examples of sports activities where a primary assumption of risk defense would be applicable. These include:

> (1) being a spectator at a sporting event such as a baseball or hockey game or tennis match where projectiles may be launched into the audience; (2) participating in a contact sporting event; (3) bungee jumping or bungee bouncing; (4) operating a jet-ski, or engaging in other noncompetitive water sports such as water-skiing, tubing, or white-water rafting; (5) drag racing; and (6) skydiving.[33]

Primary assumption of risk does not apply to the facts in this case. Unlike someone who gets hit by a hockey puck at an NHL game, a renter who goes down the stairs to finish the laundry in the evening cannot reasonably be deemed to have

---

[31] *Id.*

[32] *Storm*, 898 A.2d at 883 (internal quotations omitted).

[33] *Id.*

primarily assumed the risk of injury. Gail's conduct was not analogous to any of the sports-related activities where that affirmative defense may properly be invoked. Moreover, Gail never expressly relieved the landlord, the LLC, of a legal duty nor bargained for a shift of the risk of harm. The Superior Court erroneously granted the Defendants' Motion for Summary Judgment on the basis of primary assumption of risk.

### *Secondary Risk Assumption*

Questions regarding the existence of negligence, including secondary assumption of risk, must generally be resolved by the trier of fact.[34] "Under Delaware's former common law contributory negligence standard, only in *rare* instances, when the facts permitted reasonable persons to draw but one inference, was it appropriate for the trial court to enter judgment."[35] Today, under Delaware's comparative negligence statute the determination of the respective degrees of negligence attributable to the parties *almost always presents a question of fact for the jury*.[36] Nevertheless in *Trieval v. Sabo*, this Court stated: "[i]n *rare cases*, however, where the evidence requires a finding that a plaintiff's negligence

---

[34] *Trieval v. Sabo*, 714 A.2d 742, 745 (Del. 1998).
[35] *Id.* (emphasis added).
[36] *Id.* (emphasis added).

exceeded that of the defendant, it is the duty of the trial court, as a matter of law, to bar recovery."[37]

The Superior Court concluded that Gail's negligence constituted comparative negligence that was greater than 50% as a matter of law and relied upon our "rare cases" statement in *Trieval v. Sabo* to grant the Defendants' Motions for Summary Judgment. However, this is not one of those rare cases contemplated by *Trieval*. Rather, this case is paradigmatic of secondary assumption of risk. It is similar to the facts and controlled by our holdings in *Koutoufaris v. Dick*[38] and *Spencer v. Wal-Mart*.[39]

In *Koutoufaris*, this Court held that primary assumption of risk was not a defense to a claim by the employee, who had knowingly walked into a dangerous parking area after she had completed her work.[40] In *Koutoufaris*, we stated that "adoption of a comparative negligence standard . . . manifests a legislative intention . . . to retreat from a system of inflexible and unforgiving rules in favor of evaluation of the plaintiff's conduct on a case-by-case basis."[41] We concluded that the doctrine of secondary assumption of risk was now subsumed within a comparative fault analysis.[42] Therefore, we held that the plaintiff in *Koutoufaris*

---

[37] *Trieval*, 714 A.2d at 745 (emphasis added).
[38] *Koutoufaris*, 604 A.2d at 398.
[39] *Spencer v. Wal-Mart Stores E., LP*, 930 A.2d 881 (Del. 2007).
[40] *Koutoufaris*, 604 A.2d at 393-94.
[41] *Koutoufaris*, 604 A.2d at 398.
[42] *Id.*

15

was not barred from recovery as a matter of law for knowingly walking into a dangerous parking lot. We also held that the degree of the plaintiff's secondary assumption of risk was a question of fact that must be submitted to the jury.[43]

Similarly, in *Spencer*, the plaintiff entered a parking lot to go to work.[44] Because of melting snow, a stream of water developed in the lot.[45] Spencer claimed she slipped on the ice that formed under the water.[46] This Court stated, "Spencer did not expressly relieve Wal-Mart or any other party to the lawsuit of all legal duty."[47] Accordingly, we held that there was no primary assumption of risk.[48] The issue then became whether Spencer secondarily assumed the risk.[49] We noted that Spencer was familiar with the parking lot, chose not to walk on the sidewalk and instead walked through a stream of water that had developed.[50] We held that under those circumstances, Spencer's conduct constituted secondary assumption of risk.[51]

## *This Case*

In this case, for the reasons already stated in this opinion, there was no primary assumption of risk. The record reflects that Gail voluntarily encountered a

---

[43] *Id.*
[44] *Spencer*, 930 A.2d at 883.
[46] *Id.*
[46] *Id.*
[47] *Id.* at 886.
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*

16

known risk by descending down a dark flight of stairs. As a result, Gail's decision to proceed down the dark stairway constituted secondary assumption of risk. Secondary assumption of risk is the basis for apportionment of fault under the comparative negligence scheme.[52] That determination is almost always fact-intensive and *rarely* susceptible to disposition, as a matter of law, through summary judgment.[53] We hold that the percentage of Gail's negligence, as a result of her secondary assumption of risk, is a question of fact that must be determined by the jury.[54]

## *Conclusion*

The judgments of the Superior Court are reversed and remanded.

---

[52]*Spencer*, 930 A.2d at 885-86.

[53] *Trieval*, 714 A.2d at 745.

[54] *Spencer*, 930 A.2d at 886; *Koutoufaris*, 604 A.2d at 398.