# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SCOTT BARTH, )
)
)
)
Plaintiff, )
)
) C.A. No. N15C-01-197 MMJ
v. )
)
BLUE DIAMOND, LLC (d/b/a BLUE ) **TRIAL BY JURY OF**
DIAMOND MX PARK), a Delaware ) **TWELVE DEMANDED**
corporation, THE EAST COAST )
ENDURO ASSOCIATION, INC., a )
New Jersey corporation, and )
DELAWARE ENDURO RIDERS, INC., )
a Delaware corporation, )
)
Defendants. )

Submitted: November 17, 2017
Decided: November 29, 2017

Motions for Summary Judgment
on the Issue of Primary Assumption of Risk

**GRANTED IN PART
DENIED IN PART**

## OPINION

Batholomew J. Dalton, Esq., Laura J. Simon, Esq., Dalton & Associates, Larry E. Coben, Esq. (Argued), Gregory S. Spizer, Esq., Anapol Weiss, Attorneys for Plaintiff Scott Barth

Michael J. Logullo, Esq. (Argued), Rawle & Henderson LLP Attorney for Defendants The East Coast Enduro Association, Inc. and Delaware Enduro Riders, Inc.

George T. Lees III, Esq., Logan & Petrone, LLC Attorney for Defendant Blue Diamond, LLC

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

In this Opinion, the Court considers an apparent issue of first impression in Delaware. The question is whether the doctrine of primary assumption of risk applies in certain risky or dangerous sports-related activities in the absence of an express waiver of liability. This is a personal injury case. The plaintiff, Scott Barth, suffered serious injuries during an off-road dirt-bike race. Barth alleges that the race's course was owned by Defendant Blue Diamond, LLC ("Blue Diamond"), co-sponsored by Defendant Delaware Enduro Riders ("DER"), and overseen by Defendant East Coast Enduro Association, Inc. ("ECEA"). Barth alleges that the Defendants' negligent and reckless failure to properly mark the race's course caused his injuries. Prior to the race, Barth signed a release of liability form.

DER and ECEA filed a Motion for Partial Summary Judgment as to Barth's allegations of recklessness, which Blue Diamond adopted. DER and ECEA also jointly filed a Motion for Summary Judgment, while Blue Diamond separately filed its own. At the hearing on the motions, this Court denied the Motion for Partial Summary Judgment, holding that genuine issues of material fact exist regarding recklessness, particularly as to, among others things, "the adequacy of signage" and "the adequacy of warnings on the course."[1] The Court declined to rule from the

---

[1] October 3, 2017 Tr. of Motions, 71:12-16.

2

bench as to the Motions for Summary Judgment, instead instructing the parties to make additional submissions limited to the issue of the doctrine of primary assumption of risk, the central grounds for the three defendants' motions.

DER and ECEA argue they are entitled to summary judgment for two reasons. First, Barth signed a waiver releasing them from liability. Second, Barth assumed the risk inherent in an off-road dirt-bike race. In its separate motion, Blue Diamond makes the same two arguments and adds a third—Barth was a member of the Blue Diamond Riding Club, and Blue Diamond did not owe Barth the same duty it would owe a common law business invitee.

## MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[2] All facts are viewed in a light most favorable to the non-moving party.[3] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[4] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[5] If the non-

---

[2] Super. Ct. Civ. R. 56(c).
[3] *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).
[4] Super. Ct. Civ. R. 56(c).
[5] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

3

moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[6]

## ANALYSIS

Defendants argue that they are entitled to summary judgment because Barth signed a release of liability and, separately, because Barth assumed the risk of participating in the race. Both of these arguments are properly analyzed within the framework of the doctrine of primary assumption of risk.

In Delaware, "primary assumption of the risk is implicated when the plaintiff expressly consents 'to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.'"[7] When primary assumption of risk exists, "the defendant is relieved of legal duty to the plaintiff; and being under no legal duty, he or she cannot be charged with negligence."[8]

### The Waiver Form Released the Defendants from Liability for Negligence, not Recklessness

Defendants argue they are entitled to summary judgment under a theory of express primary assumption of risk. Before participating in the race, Barth signed a

---

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[7] *Helm v. 206 Massachusetts Avenue, LLC*, 107 A.3d 1074, 1080 (Del. 2014) (quoting *Fell v. Zimath*, 575 A.2d 267, 267–68 (Del. Super. 1989)).
[8] *Id.*

4

release titled, "RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT." It states that Barth:

> HEREBY RELEASES, WAIVES, DISCHARGES, AND COVENANTS NOT TO SUE . . . racing associations, sanctioning organizations . . . track operators, track owners . . . herein referred to as "Releasees," FROM ALL LIABILITY TO THE UNDERSIGNED . . . FOR ANY AND ALL LOSS OR DAMAGE . . . ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

Barth asserts that the entire waiver agreement is unenforceable as an invalid contract due to lack of consideration. He further contends that even if the agreement is enforceable, it does not release Defendants from liability for recklessness.

To be enforceable under Delaware law, releases of liability "must be crystal clear and unequivocal" and "unambiguous, not unconscionable, and not against public policy."[9] Barth does not (and cannot) argue that the waiver form at issue does not meet this standard. In *Lynam v. Blue Diamond LLC*, this Court found a virtually identical release form valid.[10]

Barth instead argues that the form is unenforceable due to lack of

---

[9] *Lynam v. Blue Diamond LLC*, 2016 WL 5793725, at *3 (Del. Super.).

[10] *See id.* The release in *Lynam* read:

I HEREBY RELEASE, DISCHARGE AND COVENANT NOT TO SUE the . . . track owners, [and] owners and lessees of premises used to conduct the Event(s) . . . all for the purposes herein referred to as "Releasees," FROM ALL LIABILITY TO ME, THE MINOR, [and] my and the minor's personal representatives . . . FOR ANY AND ALL CLAIMS, DEMANDS, LOSSES, OR DAMAGES ON ACCOUNT OF INJRY, including, but not limited to, death or damage to property, CAUSED . . . BY THE NEGLIGENCE OF THE "RELEASEES" OR OTHERWISE.

5

consideration. Barth bases his argument on this Court's finding in *Devecchio v. Delaware Enduro Riders, Inc.*[11] In *Devecchio*, this Court deemed a waiver of liability unenforceable due to lack of consideration when the form stated that riders agreed to inspect the course, but the defendants admitted that, under the race's sanctioning body's rules, the riders were not allowed to inspect the course before the race.[12]

As in *Devecchio*, the release here contains an agreement that the race participants "have or will immediately upon entering any of such RESTRICTED AREAS, and will continuously thereafter, inspect the RESTRICTED AREAS . . . ."[13] Unlike in *Devecchio*, however, no sanctioning body's rule barred Defendants from performing an inspection of the course.

Instead, the rule in this case stated: "Participants are allowed to walk or bicycle the course prior to the event—with the club's permission." Barth argues that, despite this distinction, *Devecchio* should apply because Barth was never given

---

[11] 2004 LEXIS 444 (Del. Super.).

[12] *Id.*

[13] The corresponding clause in *Devecchio* read:

> EACH OF THE UNDERSIGNED . . . acknowledges, agrees and represents that he has, or will immediately upon entering any of such restricted areas, and will continuously thereafter, inspect such restricted areas and all portions thereof which he enters and with which he come in contact, and he does further warrant that his entry upon such restricted area or areas and his participation, if any, in the event constitutes an acknowledgment that he has inspected such restricted area and that he finds and accepts the same as being safe and reasonably suited for the purposes of his use . . . .

permission or made aware of his responsibility to inspect the course. Notably, however, Barth never asked for permission to inspect the course. That Barth hypothetically may not have received permission to perform the inspection is not dispositive. Barth cannot claim he was denied permission if he never asked for it. Additionally, the "failure to apprise himself of, or otherwise understand the language of a release that he is asked to sign is insufficient as a matter of law to invalidate the release."[14] The Court finds that Barth's own failure to perform a permissive part of the agreement does not make the waiver invalid.

Pursuant to *Lynam*, however, the form exculpates the Defendants' negligence, not recklessness. As in *Lynam*, the form here provides for a release of liability caused by "THE NEGLIGENCE OF THE 'RELEASEES' OR OTHERWISE." As this Court determined in *Lynam*, "such [exculpatory] agreements [that expressly exempt defendants from liability for their negligent conduct] generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless or gross, and to any conduct which constitutes an intentional tort."[15]

The Court finds that the waiver form releases the defendants from their liability for negligence, but not for recklessness.

---

[14] *Id.* This principle also dispenses with the argument that Barth did not have sufficient time to understand the release that he chose to sign.

[15] *Id.* (quoting W. Page Keeton, et al., Prosser and Keeton on Torts, § 68 at 483–84 (5th ed. 1984)).

7

## Implied Primary Assumption of Risk
## Does Not Bar a Claim of Recklessness

It is undisputed that primary assumption of risk applies when the plaintiff signs a valid release of liability form.[16] But because Defendants argue that primary assumption of risk exists in addition to and independent of the waiver form, the Court must determine whether—and if so, how—to apply the defense beyond an express written agreement to waive liability.

Delaware courts have noted, paradoxically, that "depending upon the situation at hand, express consent may be manifested by circumstantial words or conduct."[17] The illogic of "express consent" being "manifested by circumstantial words or conduct" can be resolved with the conclusion that Delaware recognizes an *implied* primary assumption of risk doctrine.[18]

---

[16] *See Lafate v. New Castle Cty.,* 1999 WL 1241074 (Del. Super.) (analyzing whether a signed waiver constitutes primary assumption of risk).

[17] *Storm v. NSL Rockland Place, LLC,* 898 A.2d 874, 882 (Del. Super. 2005) (citing *Croom v. Pressley,* 1994 WL 466013, at *5 (Del. Super. 1994)).

[18] *See id.* at 882 n.30 ("'Primary assumption of risk is akin to express or *implied consent* . . . .'" (quoting 57B Am. Jur. 2d. Negligence § 1010)). *Storm* also quoted the Restatement (Second) of Torts at length to explain assumption of risk generally. *Id.* at 881. That passage described a form of assumption of risk "closely related to" that acquired through "express consent" as one in which:

> the plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances. Thus a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect him from being hit by the ball. Again the legal result is that the defendant is relieved of his duty to the plaintiff.

*Id.*; *see also McCormick v. Hoddinott,* 865 A.2d 523, 529 (Del. Super. 2004) ("In the instant case there appears to be no evidence to support a claim that minor Plaintiff expressly

Case law suggests that courts should find an implied primary assumption of risk only with respect to certain activities. Delaware cases have noted that primary assumption of risk commonly applies to "sports-related activities that 'involv[e] physical skill and challenges posing significant risk of injury to participants in such activities, and as to which the absence of such a defense would chill vigorous participation in the sporting activity and have a deleterious effect on the nature of the sport as a whole.'"[19] Examples of such sports-related activities include:

> (1) being a spectator at a sporting event such as a baseball or hockey game or tennis match where projectiles may be launched into the audience; (2) participating in a contact sporting event; (3) bungee jumping or bungee bouncing; (4) operating a jet-ski, or engaging in other noncompetitive water sports such as water-skiing, tubing, or white-water rafting; (5) drag racing; and (6) skydiving.[20]

The nature of the activity is pertinent to an analysis of primary assumption of risk. Otherwise, in the absence of a waiver of liability, the dangerousness of the activity would be irrelevant. The case law therefore suggests that the doctrine of

---

or *impliedly* assumed any risk; therefore, an affirmative defense of assumption of risk based on primary assumption of risk cannot stand.") (emphasis added).

[19] *Helm*, 107 A.3d at 1080 (quoting *Storm*, 898 A.2d at 883).

[20] *Storm*, 898 A.2d at 883 (citations omitted). *Storm* noted, however, that a "common theme" of these activities is that they frequently involve the signing of consent forms, suggesting the Court may have only meant to invoke them as another example of where express consent may apply. *Id.* However, a "common theme" is not a "common requirement"—spectators at sporting events do not sign releases of liability to view an event. Moreover, courts have found waiver of liability forms enforceable in contexts dissimilar to those listed above. *See, e.g., Ketler v. PFPA, LLC*, 2015 WL 3540187, at *2 (Del. Super. 2015) (finding a waiver form sufficient to invoke primary assumption of risk when the plaintiff snapped a cable on a rowing machine at the defendant's gym). The *Storm* Court would have had no occasion to comment on the nature of the activity if it were not independently meaningful in the analysis.

primary assumption of risk applies to certain sports-related activities, even in the absence of an express waiver form. However, though Delaware seems to allow for the application of implied assumption of risk in certain sporting events, no Delaware case has provided a framework for applying the doctrine. This precise issue appears to be one of first impression.

The California case *Peart v. Ferro*,[21] which this Court cited in support of its observations on the prevalence of primary assumption of risk in dangerous sporting events, [22] provides a means of analysis. Under the *Peart* framework, courts must examine two things to determine whether an implied primary assumption of risk exists: the nature of the activity and the relationship between the parties.[23]

When examining the nature of the activity, courts consider:

> what conditions, conduct or risks that might be viewed as dangerous in other contexts are so integral to or inherent in the activity itself that imposing a duty of care would either require that an essential aspect of the sport be abandoned, or else discourage vigorous participation therein. In such cases, defendants generally do not have a duty to protect a plaintiff from the inherent risks of the sport, or to eliminate all risk from the sport.[24]

In examining the relationship of the parties, the court bears in mind that "the general duty of due care to avoid injury to others does not apply to coparticipants in

---

[21] 13 Cal. Rptr. 3d 885, 894 (Cal. App. 4 Dist. 2004).
[22] *See Storm*, 898 A.2d at 883 (citing *Peart* to define the sort of sports-related activities that typically raise the issue of primary assumption of risk).
[23] *Peart*, 13 Cal. Rptr. 3d at 894 (citations omitted).
[24] *Id.*

sporting activities with respect to conditions and conduct that might otherwise be viewed as dangerous but upon examination are seen to be an integral part of the sport itself."[25]

When analyzed within this framework, implied primary assumption of risk remains distinct from secondary assumption of risk. Secondary assumption of risk has been subsumed by Delaware's contributory negligence statute.[26] It is therefore no longer available as a complete defense. Secondary assumption of risk exists when "the plaintiff's conduct in encountering a known risk may itself be unreasonable, because the danger is out of proportion to the advantage which he is seeking to obtain."[27] In contrast, the focus for implied primary assumption of risk remains on the nature of the activity the plaintiff has consented to participate in and the actions of the defendants—not how the conduct of the plaintiff may have contributed to his injuries. Commentators also have noted that implied primary assumption of risk is distinct from secondary assumption of risk.[28]

---

[25] *Id.* at 894–95.
[26] *Helm,* 107 A.3d at 1080 ("[I]t is now accepted in Delaware that the concept of secondary assumption of risk is completely subsumed by the principles of comparative negligence.").
[27] *Fell v. Zimath,* 575 A.2d 267, 268 (Del. Super. 1989).
[28] *See* Restatement (Second) of Torts § 496A (1979) (distinguishing a description of implied primary assumption of risk from a secondary assumption of risk, "in which the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable, and amounts to contributory negligence"); 57B Am. Jur. 2d Negligence § 1010 ("Primary assumption of risk is akin to express or implied consent, and relieves the defendant of any obligation to exercise care for the injured person's protection, including situations where an injured person, having knowledge of a hazard, continued voluntarily to encounter it. Secondary assumption of risk is akin to contributory negligence . . . .").

11

The Court finds that implied primary assumption of risk is a valid affirmative defense to negligence. Because Barth signed a valid release of liability for Defendants' negligence, the remaining issue in this case is whether implied primary assumption of risk is a valid affirmative defense to allegations of recklessness as well.

Though defendants do not owe a duty to protect a plaintiff from the risks inherent in an activity to which the doctrine of implied primary assumption of risk applies, "defendants do have a duty not to increase the risk of harm beyond what is inherent in the sport through intentional or reckless behavior that is completely outside the range of the ordinary activity in the sport."[29]

Here, the Court has ruled as a matter of law that a genuine issue of material fact exists as to whether Defendants recklessly marked the course with inadequate signage. The Court finds there is a genuine issue of material fact as to whether the Defendants committed reckless conduct which increased the race's risk of harm.[30]

---

[29] *Peart*, 13 Cal. Rptr. 3d at 894.

[30] This conclusion is in line with Delaware decisions that applied similar logic under framework of a different name. *See Farrell v. University of Delaware*, 2009 WL 3309288, at *3 (Del. Super.) (finding persuasive the New York Supreme Court's rationale that "[a]lthough [a] rink could not be liable for harms caused by the inherent dangers of skating or by unpreventable events, the court considered assumption of risk inapplicable to injuries resulting from 'the reckless actions of another skater which the defendant, by adequate supervision, could have prevented.'"(quoting *Shorten v. City of White Plains*, 637 N.Y.S.2d 791, 796 (N.Y. App. Div.1996)); *Lafate v. New Castle Cty.*, 1999 WL 1241074, at *4 (Del. Super. 1999) (denying summary judgment, in part because "it would not be within the normal expectation of the health risk of playing basketball that a supervising employee would place a metal bar within normal head range between two basketball courts" in spite of an express release of liability).

Further, the Court holds that the doctrine of implied primary assumption of risk does not insulate a tortfeasor from liability for intentional or reckless conduct. The Defendants' Motions for Summary Judgment on this issue are denied.

### Barth was a Business Invitee for the Race Despite his Blue Diamond Membership

Because Barth's primary express and implied assumption of risk bar his claims of negligence, the Court need not reach this issue. However, for the sake of completeness, the Court finds that because Barth paid a fee to participate in the race, his relationship with Blue Diamond for the purposes of that event was that of a business invitee. His membership with the Blue Diamond Riding Club had no bearing on his participation in the race.

This fact distinguishes this case from *Ketler v. PFPA, LLC*,[31] upon which Blue Diamond relies. There, the plaintiff was a member of a fitness center and was injured while using a rowing machine. Because the fitness center was a "private-membership based business," the Court found the fitness center did not owe the plaintiff the same duty it "would owe to a common law business invitee or to the public at large."[32]

In this case, participation in the race was not restricted to members of the Blue Diamond Riding Club. The race was open to any "American Motorcyclist

---

[31] 2015 WL 3540187 (Del. Super 2015).
[32] *Id.* at *1.

13

Association Member." Unlike the fitness center, Blue Diamond invited non-members to the race, and therefore owed participants the duties owed to business invitees.

## CONCLUSION

The doctrine of implied primary assumption of risk does not insulate tortfeasors from liability for intentional or reckless conduct.

DER and ECEA's Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART**. The Court finds that the allegations of negligence against these defendants are barred under the doctrine of primary assumption of risk. There remains a genuine issue of material fact as to the allegations of recklessness against these defendants.

Blue Diamond's Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART**. The Court finds that the allegations of negligence against this defendant are barred under the doctrine of primary assumption of risk. There remains a genuine issue of material fact as to the allegations of recklessness against this defendant. With the dismissal of the negligence allegations, the question of Blue Diamond's status as a business invitee is moot.

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston

14