**TOLL BROTHERS, INC., Defendant and Third Party Plaintiff Below, Appellant,**

v.

**Scott CONSIDINE and Shawn Considine, Plaintiffs Below, Appellees.**

No. 148, 1997.

Supreme Court of Delaware.

Submitted: Nov. 12, 1997.
Decided: Feb. 9, 1998.

Daniel L. McKenty, Wendelburg, McCullough & McKenty, P.A., Wilmington, for Appellant.

Douglas B. Catts and Noel E. Primos, (argued), Schmittinger & Rodriguez, P.A., Dover, for Appellees.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ, constituting the Court en Banc.

WALSH, Justice.

In this appeal from the Superior Court, we address an issue of first impression in this Court: Is a violation of the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678 ("OSHA"), negligence *per se* or mere evidence of negligence? We conclude that, in light of common law standards and the interplay between Delaware and Federal statutory enactments, OSHA violations may constitute some evidence of negligence but are not actionable *per se*. Accordingly, the Superior Court's jury instruction to the contrary was error, and this matter must be remanded for a new trial.

I

This appeal was initiated by Toll Brothers, Inc. ("Toll Brothers"), a general contractor engaged in the construction of a residential community development known as "Autumn Hills" in New Castle County, Delaware. Toll Brothers contracted with Cary Insulation ("Cary") for insulation at various houses in the development. Another subcontractor, Neshaminy Mechanical, Inc. ("Neshaminy"), was employed to install heating and cooling systems in the homes.

Scott Considine was employed by Cary as an insulation installer at the site. On August 15, 1994, while working in a new home, Considine suffered compound fractures of both wrists when one of the legs of the ladder upon which he was standing fell into an open ventilation return. The ventilation return had been cut in the floor of the home by an employee of Neshaminy. The opening measured four inches by eleven inches and was uncovered.

Considine filed suit against Toll Brothers alleging, *inter alia*, that it was negligent in failing to maintain a safe workplace. These allegations were based both upon theories of common law negligence, as well as upon violations of certain OSHA regulations. Toll Brothers denied negligence and filed a third party complaint against Neshaminy and Cary, seeking indemnification under subcontractor agreements. A default judgment was entered against Neshaminy after it failed to appear.

Toll Brothers moved for partial summary judgment on the allegations of negligence premised on its alleged violation of certain OSHA regulations. In support of its motion for partial summary judgment, Toll Brothers argued that OSHA does not create a private cause of action and that, if it did, Toll Brothers was not responsible for implementing OSHA regulations at the Autumn Hills site. At the hearing on the partial summary judg-

ment motion, Considine withdrew his allegations based on general, common law negligence, opting to proceed solely on claims arising under OSHA.

The Superior Court denied Toll Brothers' motion for partial summary judgment. Relying upon *Seither v. The Balbec Corp.*, Del.Super., C.A. No. 90C–11–257, 1995 WL 465187 (July 23, 1995), *aff'd*, Del.Supr., 676 A.2d 906 (1996) (ORDER), the court ruled that, under Delaware law, a general contractor may be held liable, at the behest of a subcontractor's employee, for violation of OSHA regulations, and that, if the facts warranted, its liability would be submitted to the jury under a theory of negligence *per se*.

The case proceeded to trial before a jury. At the close of all the evidence, Toll Brothers moved for judgment in its favor as a matter of law, again asserting that the OSHA violations, standing alone, could not provide a predicate for liability. This motion was denied. The jury was instructed that, should it find a violation of certain OSHA regulations, Toll Brothers was negligent *per se*.[1]

After the jury returned a general verdict for Considine and awarded damages, Toll Brothers moved again for judgment as a matter of law and, in the alternative, for a new trial. The Superior Court denied these motions. Toll Brothers appeals from those rulings, as well as from the denial of its motion for partial summary judgment. All three rulings of the Superior Court implicate a common issue and the focus of this appeal: whether OSHA violations are deemed negligence *per se*.

## II

Negligence *per se* is a doctrine that developed at common law, although the term does not have a uniform meaning in the tort jurisprudence of most states. Paul Sherman, *Use of Federal Statutes in State Negligence Per Se Actions*, 13 **Whittier L.Rev.** 831, 877, 879 (1992). "Originally, common law operated on the principle that there is no right without a remedy. Common law courts were quite willing to imply the existence of a cause of action from legislative adoption of a statute creating a right." *Id.* at 879. Civil actions based on violations of statute existed prior to the late nineteenth century emergence of negligence as a separate tort based on violation of a duty. *See* Jean Elting Rowe & Theodore Silver, *The Jurisprudence of Action and Inaction in the Law of Torts: Solving the Puzzle of Nonfeasance and Misfeasance from the Fifteenth through the Twentieth Centuries*, 33 **Duq.L.Rev.** 807, 834 (1995).

■ It has long been recognized that a legislative body may substitute its enactments for the general negligence standard of conduct required of a reasonable person. Erza Thayer, *Public Wrong and Private Action*, 27 **Harv.L.Rev.** 317 (1914). "When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care for all members of the community, from which it is negligence to deviate." W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* § 36, at 220 (5th ed. 1984) (footnote omitted). A finding of a violation of such a statute "stamp[s] the defendant's conduct as negligence, with all of the effects of common law negligence, but with no greater effect." *Id.* at 230 (footnote omitted).

■ As legislative enactments defining standards of care, OSHA regulations, conceptually at least, may provide a basis for recovery in tort. In 1970, the United States Congress enacted OSHA for the stated purpose to "provide for the general welfare, to assure so far as possible every working man and

---

1. The specific instruction, in pertinent part, was as follows:

    When there is a governing statute or a regulation promulgated pursuant to a governing statute designed to protect workers from injury, it is said that violation of the standard set forth in that statute or regulation is negligence *per se;* that is, negligence in and of itself because of the violation. If the violation of the statutory or regulatory standard is a proximate cause of the injuries complained of by the plaintiff, the law will attach legal responsibility to the one who violates the statutory or regulatory standard. A violation of the regulations of the Occupational Safety and Health Administration, which we call OSHA, would constitute negligence *per se*.

woman in the Nation safe and healthful working conditions and to preserve our human resources...." 29 U.S.C. § 651(b)(3). OSHA "attempts to accomplish its broad objectives through many means, one of which is by encouraging the states to assume responsibility for occupational safety and health to the greatest extent possible." Ferdinand S. Tinion, Annotation, *Pre-emptive Effect of Occupational Safety and Health Act of 1970 (29 U.S.C. §§ 651–678) and Standards Issued Thereunder*, 88 A.L.R.Fed. 883 § 2 (1988). In enacting OSHA,

> Congress authorized the Secretary of Labor to set mandatory occupational safety and health standards applicable to all businesses affecting interstate commerce, 29 U.S.C. § 651(b)(3), and thereby brought the Federal Government into a field that traditionally had been occupied by the States. Federal regulation of the workplace was not intended to be all encompassing, however.... Section 4(b)(4) of the OSH Act states that the Act does not 'supersede or in any manner affect workmen's compensation law or ... enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.' 29 U.S.C. § 653(b)(4).

*Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 96, 112 S.Ct. 2374, 2381–82, 120 L.Ed.2d 73 (1992). States have the option of preempting federal regulation entirely by submitting to, and obtaining approval from, the Secretary of Labor State plans for the development and enforcement of State standards.[2] 29 U.S.C. § 667(b).[3]

### III

Delaware's attempt to regulate the workplace, either exclusively or complemen-

tary to the efforts of the Federal Government, has a somewhat unusual history. In 1961, the Delaware General Assembly empowered the Delaware Secretary of Labor to

> make modify and repeal rules for the prevention of accidents or of industrial or occupational diseases in every employment or place of employment or such rules for the construction, repair and maintenance of places of employment as shall render them safe. Such rules when made shall have the force and effect of law....

19 *Del.C.* § 106(a). In 1970, when Congress enacted OSHA, the United States Secretary of Labor subsequently promulgated regulations thereunder. In response, the Delaware Secretary of Labor adopted a portion of those federal regulations, specifically 29 C.F.R. Part 1926, pertaining to construction. This administrative action was deemed sufficient, at the time, to ratify violations of these federal regulations as negligence *per se* for State law purposes.

In 1992, the United States Supreme Court, in *Gade v. National Solid Wastes Management Association*, 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992), held that, even though a state may have adopted OSHA regulations, if the state did not obtain approval from the federal government, pursuant 29 U.S.C. § 667(b), for its regulatory plan, such state legislative adoption was preempted by OSHA. *U.S. Const.* art. VI, cl. 2. The Delaware General Assembly took no legislative action in response to *Gade*. Thus, whatever Delaware had been trying to accomplish through legislative enactment and administrative regulation was rendered a nullity by the United States Supreme Court's interpretation of the preemptive effect of OSHA. In view of the General Assembly's inaction following *Gade's* pronouncement of federal preemption of workplace regulations, the question arises whether negligence *per se* based on OSHA violations provides a viable

**2.** About one-half of the States have received approval for their own state plans. 29 C.F.R. pts. 1952, 1956 (1991). Delaware is not among them.

**3.** 29 U.S.C. § 667(b) provides that
[a]ny State which, at any time, desires to assume responsibility for development and

enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.

cause of action under State law. Because the OSHA statute itself includes a disclaimer that federal regulations, standing alone, do not "enlarge state common law rights, duties or liabilities," one must look to Delaware common law as the repository for the creation of a cause of action based on negligence *per se*, bearing in mind that statutory underpinnings no longer exist.

In 1972, this Court decided *Sammons v. Ridgeway*, Del.Supr., 293 A.2d 547 (1972), a negligence action involving the question of whether violation of a State Board of Education regulation, governing the operation of school buses, constitutes negligence *per se*. The Court initially noted that "[i]t has been long settled law in this State that violation of a statute or ordinance enacted for the safety of others is negligence in law or negligence *per se*." [4] *Id.* at 549. The court held that there is "no valid distinction, in the applicability of the negligence *per se* doctrine, between a rule ... prescribed by statute, on one hand, and one prescribed by regulation, on the other...." *Id.* at 549–50. For present purposes, the significance of the *Sammons* ruling extending the negligence *per se* doctrine to regulations of an administrative agency is its requirement that actionable administrative regulations must be promulgated pursuant to legislative directive and enacted for a valid purpose. *Id.*

In *Rabar v. E.I. duPont de Nemours & Co.*, Del.Super., 415 A.2d 499 (1980), the Superior Court extended the principle of negligence *per se* to OSHA regulations in an action by an employee of a contractor against the owner of the project on the basis that the Delaware Secretary of Labor had adopted the OSHA regulations contained in 29 C.F.R. Part 1926, pursuant to the legislative grant of authority in 19 *Del.C.* § 106(a). *Rabar*, 415 A.2d at 503–04. In a later Superior Court decision rendered after the Supreme Court's preemption ruling in *Gade*, it was determined, however, that Delaware's inaction in

submitting a plan for federal approval precluded application of "valid and enforceable Delaware OSHA regulations." *Figgs v. Bellevue Holding Co.*, Del.Super., 652 A.2d 1084, 1089–90 (1994). The *Figgs* court further noted that, in absence of a OSHA predicate for liability, an employee must rely upon common law tort claims. *Id.* at 1091. We approve the court's analysis in *Figgs* as a current statement of law.

The Superior Court's denial of summary judgment on the question of whether OSHA violations constitute negligence *per se* was prompted by its reliance on a subsequent Superior Court ruling involving a similar factual pattern. In *Seither v. The Balbec Corp.*, Del.Super., CA 90C–11–257, 1995 WL 465187 (July 23, 1995), *aff'd*, Del.Supr., 676 A.2d 906 (1996) (ORDER), a worker for a drywall subcontractor sought recovery against another subcontractor and a general contractor for a work related injury. At trial, the court instructed the jury, *inter alia*, that an OSHA violation would constitute negligence *per se*. In rejecting a post-trial attack on that instruction, the Superior Court cast some doubt on the correctness of *Figgs* and seemed to suggest that the doctrine of negligence *per se*, as part of the common law of Delaware, applies "when a statute or regulation meets the criteria of that longstanding doctrine." *Seither*, slip op. at 5 n. 4. Thus, the Court was of the view that the doctrine of negligence *per se* extends to OSHA violations, notwithstanding the federal disclaimer that the act does not "enlarge, diminish, or affect" Delaware law. *Id.*

Nonetheless, the *Seither* Court termed its negligence *per se* discussion as "artificial" in view of the overwhelming evidence of negligence on the part of the subcontractor-defendant. *Id.* at 6. The Court then concluded that "even if [OSHA regulations] only constitute evidence of negligence" they served, under the circumstances, to provide

---

4. The previous Delaware cases cited by the Court in support of the "long settled" principle all involved negligence claims predicated upon specific legislative enactments: *Nance v. Rees*, Del. Supr., 161 A.2d 795, 797 (1960) (violation of motor vehicle statute); *Wealth v. Renai*, Del.Super., 114 A.2d 809, 810 (1955) (violation of mo-

tor vehicle statute); *Lynch v. Lynch*, Del.Super., 195 A. 799, 801 (1937) (violation of motor vehicle statute); *Wollaston v. Stiltz*, Del.Super., 114 A. 198, 200 (1921) (violation of motor vehicle law); *Farrow v. Hoffecker*, Del.Super., 79 A. 920, 921 (1906) (violation of town ordinance).

the standard as a matter of law. *Id.* It thus appears that the court's treatment of negligence *per se* under OSHA was not necessary to its ultimate holding and may be viewed as dicta. In any event, to the extent that the *Seither* holding is inconsistent with this Court's present holding, it does not represent the current state of the law.

■ Although the doctrine of negligence *per se* may be said to have common law roots as *Seither* suggests, it has never been viewed as a free-standing measure of tort liability. In applying a negligence *per se* standard, the fact finder need determine only whether the defendant committed the act and if such conduct caused the plaintiff's damages. The jury is precluded from finding that the defendant may escape liability even though he acted reasonably under the circumstances. The underlying rationale supporting this abbreviated result is that the legislature considered the broader societal consequences when it established the standards and that neither a court nor a jury should substitute their concepts of foresight for that determination. In the words of Judge (later Justice) Cardozo: "We think the unexcused omission of the statutory [requirements] is more than some evidence of negligence. It is negligence in itself." *Martin v. Herzog,* N.Y.Ct.App., 228 N.Y. 164, 126 N.E. 814, 815 (1920). *See also Restatement of Torts (Second)* § 286, cmt. d ("When the court does adopt the legislative standard, it is acting to further the general purpose which it finds in the legislation and not because it is any way required to do so.")

It must be emphasized that, in this case, the plaintiff's claim was submitted to the jury on only one theory of recovery: that OSHA violations by Toll Brothers constituted negligence *per se.* There were no parallel claims based on breaches of common law negligence standards. Because it is clear that the lack of State legislative promulgation, combined with the federal disclaimer, precludes consideration of OSHA standards as negligence *per se,* the giving of the instruction was error.

### IV

■ While we conclude that the OSHA violations asserted against Toll Brothers in this case may not be the basis for negligence *per se,* the substance of the OSHA regulations may, nonetheless, be relevant as standards bearing upon conduct of a general contractor. *Cf. Delaware Elec. Coop., Inc. v. Duphily,* Del.Supr., 703 A.2d 1202, 1209 (1997) (failure to adhere to regulatory standard is evidence of negligence, not negligence *per se,* where duty to abide by standard arises from contract). If, as appears to be the case, Toll Brothers undertook inspection of the premises to determine adherence to general safe working conditions, OSHA regulations might well provide a standard that is part of the total mix of what is reasonable conduct under the circumstances. Because the plaintiff in this case was assured by the Superior Court's pretrial ruling that he could present a jury question merely through proof of the OSHA standards, he made no attempt to prove their general relevancy or otherwise present evidence of their applicability. For this reason, the interests of justice require that plaintiff be permitted to re-present his evidence through the grant of a new trial with a jury instruction free of the erroneous statement on negligence *per se.*

Finally, although Toll Brothers has also alleged that the trial court instructed the jury on the applicability of a specific OSHA regulation that concededly was not in effect at the time of the accident, we deem that claim to be moot. We assume that, upon retrial, the jury will be instructed correctly concerning any OSHA standards applicable to Toll Brothers' conduct and in effect at the time of the accident.

The judgment of the Superior Court is REVERSED and the matter REMANDED for a new trial.