JACK MANERCHIA, Plaintiff Below, Appellant,
v.
KIRKWOOD FITNESS AND RACQUETBALL CLUBS, INC., Defendant Below, Appellee.
No. 412, 2009.
Supreme Court of Delaware.
Submitted: February 17, 2010.
Decided: March 25, 2010.
Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

ORDER
JACK B. JACOBS, Justice.
This 25th day of March 2010, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:
1. Jack Manerchia ("Manerchia") appeals from a Superior Court order entering summary judgment in favor of Kirkwood Fitness & Racquetball Clubs, Inc. ("Kirkwood Club" or "Club"), and denying Manerchia's motion for continuance.[1] On appeal, Manerchia claims that the Superior Court erred in granting summary judgment for Kirkwood Club because Manerchia had established facts that would enable a jury to find that the Club was negligent, and that its negligence was the proximate cause of Manerchia's injury. We find no error and affirm.
2. On February 27, 2006, Manerchia visited Kirkwood Club. During that visit Manerchia used the Club's hot-tubhe sat on edge of the hot-tub with his legs in the water for about 15 minutes. Manerchia testified that a few days after that visit his leg developed a rash and was swollen. On March 8, 2006, Manerchia visited Dr. Seth Ivins' ("Ivins") office for a follow-up examination involving a back problem from which Manerchia suffered. Dr. Ivins' records indicate that during that examination he found no pallor, jaundice, rashes, lesions or edema on Manerchia's ankles. On March 14, 2006, Manerchia went to the Christiana Care Health Services' emergency room because he had a rash on his right leg, which was swollen, and he was in pain. He was diagnosed with cellulitis, which resulted in permanent injuries.[2]
3. On April 10, 2007, Manerchia filed an action against Kirkwood Club, claiming that the Club negligently maintained the hot-tub that caused Manerchia's cellulitis. On April 4, 2008, the Superior Court issued a Trial Scheduling Order requiring Manerchia to produce expert reports by October 15, 2008,[3] and setting December 31, 2008 as the parties' discovery deadline. Trial was scheduled to commence on April 27, 2009.
4. Dr. Ivins was deposed in May 2008. He testified that the bacteria that caused Manerchia's cellulitis "could have come" from Kirkwood Club's hot-tub, but that "it is just as likely that it came from there as anywhere else."
5. On September 5, 2008, Manerchia's original counsel withdrew. In its order allowing counsel to withdraw the Superior Court warned Manerchia that the case would be dismissed if no activity occurred by November 2008. On October 27, 2008, Kirkwood Club moved to dismiss the case and for summary judgment. That motion was heard on November 6. Manerchia appeared at the hearing, accompanied by counsel who addressed the Court, but did not enter an appearance. The Superior Court noted that based on the then existing record, Kirkwood Club was entitled to summary judgment, but gave Manerchia 30 days to find new counsel and submit expert opinions addressing the cause of Manerchia's illness and the cleanliness of the hot-tub at Kirkwood Club.
6. On December 10, 2008, after the 30 day deadline had passed, Manerchia filed, pro se, a letter from Dr. Charles Hesdorffer ("Hesdorffer") opining:
with a reasonable degree of medical certainty ... and following [a] careful evaluation of [Manerchia's] medical records, his clinical perspective, and based on his laboratory studies, [that] the cellulitis that he developed was a direct result of his immersion in the hot tub at Kirkwood Health Club in February 2006.
7. Manerchia's current counsel entered his appearance on December 16, 2008. Correspondence between counsel and the Superior Court ensued. The Superior Court required Manerchia "to present evidence proving ... specific way(s) [Kirkwood Club] was negligent and a specific way that [the Club's] negligence caused [Manerchia's] cellulitis." Counsel responded that in his opinion expert testimony on negligence was not needed to avoid summary judgment. Counsel informed the Superior Court that he had retained a liability expert, but asked for additional time to perform discovery and to allow the expert to complete her report. On June 23, 2009, the Superior Court denied that request (which the Court treated as motion for a trial continuance) and entered summary judgment for Kirkwood Club.[4] The Superior Court explained that although Manerchia "could have shown a theoretical possibility that he was sickened by [Kirkwood Club's] hot-tub ... he could not prove that [the Club] probably was negligent and [that] its negligence probably caused" Manerchia's condition.[5] This appeal followed.
8. Manerchia claims that the Superior Court reversibly erred in granting Kirkwood Club summary judgment, because he was not legally required to present expert testimony on negligence and proximate causation to avoid summary judgment. Specifically, Manerchia argues that: (i) the standard of care owed by businesses to their invitees is well established under Delaware law; (ii) whether Kirkwood Club maintained its hot-tub in accordance with that standard of care is an issue for a jury to determine without the need for an expert; and (iii) he had established that Kirkwood Club's hot-tub caused his cellulitis by submitting the expert opinions of Dr. Ivins and Dr. Hesdorffer. Manerchia also claims that the Superior Court abused its discretion by refusing to grant him additional time to take discovery and submit an expert opinion establishing Kirkwood Club's negligence (to the extent such an opinion was required).
9. We review the Superior Court's decision granting summary judgment de novo, "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute."[6]
10. To prevail in his negligence action against Kirkwood Club, Manerchia had to establish that (i) Kirkwood Club owed him a duty of care, (ii) Kirkwood Club breached that duty, and (iii) that breach proximately caused Manerchia's injury.[7] "Generally speaking, issues of negligence are not susceptible of summary adjudication.... Similarly, questions of proximate cause except in rare cases are questions of fact ordinarily to be submitted to the jury for decision."[8] But where the nonmoving party fails to produce sufficient proof of an essential element of that party's case, the moving party is entitled to summary judgment.[9] Because Manerchia failed to offer any proof of Kirkwood Club's alleged negligence and proximate causation, this is one of those "rare" negligence cases that is susceptible of summary adjudication.
11. Manerchia's argument that the duty of care owed by business owners to their invitees is well established under Delaware law may be correct.[10] He fails, however, to offer any proof that Kirkwood Club breached that duty.
12. Manerchia claims that Kirkwood Club failed to comply with this State's regulatory safety requirements for the maintenance of hot-tubs, and that a violation of a regulation is negligence per se.[11] Manerchia offers no proof of that failure other than his recollection that (i) on February 27, 2006, the water in the hot-tub looked dirty, and (ii) when he next visited the club, on March 12, 2006, the hot-tub was closed off with caution tape.[12] Even if viewed in the light most favorable to Manerchia, those facts do not establish that Kirkwood Club failed properly to maintain the hot-tub.[13]
13. Nor can Manerchia avoid summary judgment by relying on an adverse inference from Kirkwood Club's inability to produce records showing that the Club complied with the State's regulatory requirements. The Club had discarded those records "in the regular course of business" in compliance with State regulations, before Manerchia filed his claim in April 2007.[14]
14. Manerchia offers no independent evidence that Kirkwood Club breached its duty of care to maintain a safe hot-tub.[15] Rather, he attempts to infer such a breach from his unfortunate injury, by claiming that if bacteria in a hot-tub causes an infection to a person entering that tub, then "the State regulatory safety requirements and standard of care must have been violated." That inference is flawed because it rests on unsubstantiated assumptions that the Club's hot-tub was contaminated with the bacteria that caused Manerchia's cellulitis. Although "a plaintiff may establish the negligence of the defendant by proof of circumstances from which an inference of negligence follows as a natural or very probable conclusion from the facts proven," no such facts were proven here.[16]
15. Even if we assume that Manerchia could prove that Kirkwood Club was negligent in maintaining the hot-tub, he has provided no proof that his use of the hot-tub proximately caused his injuryi.e., that but for that negligence Manerchia would not have developed cellulitis.[17] Specifically, Manerchia is unable to prove that the source of the bacteria that caused his cellulitis was the Club's hot-tub.
16. Because the identification of the source of bacteria is a matter that requires an understanding and analysis of issues beyond the ken of the typical jury, Manerchia had to present expert testimony to establish causation.[18] Manerchia cannot rely on Dr. Ivins as a causation expert because Dr. Ivins could not determine the source of the bacteria that caused Manerchia's cellulitis.[19] Dr. Hesdorffer's belatedly submitted opinion that Manerchia developed cellulitis as "a direct result of his immersion in the hot tub ... in February 2006," is insufficient, because it is conclusory. Dr. Hesdorffer offers no explanation as to how the facts and records that he relied upon (i.e., Manerchia's medical records, clinical perspective and laboratory studies) prove that Manerchia's cellulitis was a direct result of his immersion in the Club's hot-tub.[20] Dr. Hesdorffer did not testify that Manerchia's condition amounts to a "signature disease"[21] nor did he address other possible causes of cellulitis.[22] Further, the "laboratory studies" relied upon by Dr. Hesdorffer merely confirmed the medical diagnosis of Manerchia's condition, not the cause of that condition.[23] Therefore, Manerchia failed to provide any proof that his injury was caused by his use of a hot-tub, let alone the hot-tub in Kirkwood Club's facility.
17. In short, the record does not support two of three essential elements of Manerchia's case, despite being given an adequate time for discovery. Therefore, the Superior Court properly granted Kirkwood Club's motion for summary judgment.
18. Manerchia next claims that the Superior Court erred by denying his requests for additional time to conduct discovery and submit an expert opinion on negligencerequests that the Superior Court treated as a motion for trial continuance.
19. We review Superior Court rulings on scheduling issues for abuse of discretion.[24] If the Superior Court's judgment "was based upon conscience and reason, as opposed to capriciousness or arbitrariness," this Court may not substitute its own notions of what is right for those of the Superior Court.[25] Here, the Superior Court's decision not to grant Manerchia additional time for discovery was reasonable. The Superior Court put Manerchia on noticeon more than one occasionthat he would not be able to prevail without competent counsel and expert witnesses. The Superior Court gave Manerchia the opportunity to find such experts "until the last moment before trial," despite Manerchia's failure to comply with the Court's deadlines.[26] Therefore, there was no abuse of discretion in refusing to extend an additional deadline to Manerchia.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Manerchia v. Kirkwood Fitness & Racquetball Clubs, 2009 WL 2852600 (Del. Super. Ct. Jun. 23, 2009).
[2] Manerchia cannot stand for significant periods of time without developing marked swelling and pain in the right leg and lower abdomen.
[3] That order superseded a Case Scheduling Order issued on December 14, 2007, requiring Manerchia to produce expert reports by March 4, 2008.
[4] Manerchia, 2009 WL 2852600.
[5] Id. at *2.
[6] Estate of Rae v. Murphy, 956 A.2d 1266, 1269-70 (Del. 2008) (citing Green v. Weiner, 766 A.2d 492, 494 (Del. 2001)).
[7] Riedel v. ICI Americas, Inc., 968 A.2d 17, 20 (Del. 2009).
[8] Ebersole v. Lowengrub, 180 A.2d 467, 469 (Del. 1962).
[9] Burkhart v. Davies, 602 A.2d 56, 59 (Del. 1991) (applying Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).
[10] See Wilmington Country Club v. Cowee, 747 A.2d 1087, 1092 (Del. 2000) (holding that a property owner owes a business invitee a duty to provide safe ingress and regress); DiOssi v. Maroney, 548 A.2d 1361, 1364 (Del. 1988) (holding that business owners owe a business invitee a duty to protect him from foreseeable dangers that he might encounter while on the premises).
[11] Capital Management Co. v. Brown, 813 A.2d 1094, 1099 (Del. 2002) ("It is long-settled Delaware law that the violation of a statute, or regulation having the force of a statute, enacted for the safety of others is negligence in law or negligence per se.") We do not address the question of whether the instructions found in the State of Delaware Public Pool Operator Handbookon which Manerchia reliesare regulations that may be used as a basis for finding negligence per se. See Toll Brothers, Inc. v. Considine, 706 A.2d 493 (Del. 1983).
[12] Kirkwood Club claims that "there is no record or recollection of hot tub closure to club members during the four weeks before or after February 27, 2006."
[13] See State of Delaware Public Pool Operator Handbook at 1 ("Pool water may ... look dirty and turbid and quite uninviting to swimmers but actually may be completely safe and free from pathogenic organisms.")
[14] See State of Delaware Regulations Governing Public Pools section 26.607 (providing that records of sample results be kept at the pool for at least one year).
[15] Therefore, it appears impossible that an expert witness would be able to find factual support for an opinion that Kirkwood Club was negligent.
[16] Wilson v. Derrickson, 175 A.2d 400, 402-03 (Del. 1961) (affirming judgment for defendants in personal injury action because there was more than one reasonable inference to be drawn concerning the manner in which the oily substance which caused plaintiff's fall came upon the floor).
[17] Mazda Motor Corp. v. Lindahl, 706 A.2d 526, 532 (Del. 1998).
[18] Campbell v. DiSabatino, 947 A.2d 1116, 1118 (Del. 2008) (holding that plaintiffs were required to present expert testimony to opine on the source of invisible airborne mold that caused plaintiffs' injuries); Campbell v. Stonebridge Life Ins. Co., 966 A.2d 347 (Table), 2009 WL 315687 at 3 (Del. Feb. 10, 2009) (holding that the absence of such expert testimony will preclude the issue from ever reaching the jury).
[19] Dr. Ivins testified that it is just as likely that the bacteria came from the Club's hot-tub as from any other source.
[20] See Money v. Manville Corp. Asbestos Disease Compensation Trust Fund, 596 A.2d 1372, 1377-78 (Del. 1991) (holding that expert opinion that plaintiffs' disease was caused by exposure to asbestos products was insufficient because it did not establish the causal nexus between each product and each related disease); Crookshank v. Bayer Healthcare Pharm., 2009 WL 1622828 (Del. Super. Ct. May 22, 2009).
[21] A "signature disease" is a disease uniquely related to exposure to a certain substance and rarely observed in individuals not exposed to that substance. Hurtado v. Purdu Pharma Co., 800 N.Y.S.2d 374 (Table), 2005 WL 192351, at *6 (N.Y. Sup. Ct. Jan. 24, 2005); Scaife v. Astrazeneca LP, 2009 WL 1610575, at *16 (Del. Super. Ct. Jun. 9, 2009) (defining a "signature disease" as a disease that has low background rate and limited risk factors); Torrejon v. Mobil Oil Co., 876 So.2d 877, 892 (La. Ct. App. 2004) ("A signature disease is one which is extremely rare in the general population but far more prevalent among those exposed to a particular substance; the disease in a sense bears the signature of the substance.")
[22] Manerchia, 2009 WL 2852600, at *2.
[23] Id.
[24] Coleman v. PricewaterhouseCoopers, LLC, 902 A.2d 1102, 1107 (Del. 2006).
[25] Id. at 1106.
[26] Manerchia, 2009 WL 2852600, at *3.