# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

EMILY COULTER, Individually, as )
Administratrix of the Estate of Bryan )
Dukes, Deceased, and as Next Friend )
and Guardian of J.F., a minor, O.D., )
a minor, J.F., O.D. and R.D., )
                     )
        Plaintiffs, )
                     )
          v. )   C.A. No.: N20C-12-207 SPL
                     )
EDWARD STEEN, SUSAN STEEN, )
JESSE STEEN, STEEN FARMS, LLC )
and DELAWARE ELECTRIC )
COOPERATIVE, INC., )
                     )
        Defendants, )
                     )
EDWARD STEEN, SUSAN STEEN )
and JESSE STEEN, )
                     )
        Third-Party Plaintiffs, )
                     )
          v. )
                     )
NAGEL FARM SERVICE, INC., )
                     )
        Third-Party Defendant. )

Submitted:  May 24, 2025
Decided: August 29, 2025

*Upon Defendant Steens'*
*Motion for Summary Judgment,*
**DENIED**.

*Upon Defendant Steens'*
*Motion for Partial Summary Judgment*
*(Survivorship & Punitive Damages),*
**GRANTED**.

*Upon Defendant Delaware Electric Cooperative, Inc.'s*
*Motion for Summary Judgment or, in the Alternative,*
*Partial Summary Judgment,*
**DENIED in part, GRANTED in part**.

*Upon Third-Party Defendant Nagel Farm Services, Inc.'s*
*Motion for Summary Judgment,*
**GRANTED**.

## ORDER

Joseph J. Rhoades, Esquire, Stephen T. Morrow, Esquire, RHOADES & MORROW, LLC, Wilmington, Delaware; James R. Ronca, Esquire (*argued*), and Meghan Mills, Esquire, ANAPOL WEISS, Philadelphia, Pennsylvania, *Attorneys for Plaintiffs, Emily Coulter, Individually, as Administratrix of the Estate of Bryan Dukes, Deceased, and as Next Friend and Guardian of J.F., a minor, O.D, a minor, and R.D., a minor, O.D. and R.D.*

Kenneth M. Doss, Esquire (*argued*), and Daniella C. Spitelli-Sarnecky, Esquire, CASARINO CHRISTMAN SHALK RANSOM & DOSS, P.A., Wilmington, Delaware, *Attorneys for Defendants and Third-Party Plaintiffs, Edward Steen, Susan Steen, and Jesse Steen.*

David J. Soldo, Esquire (*argued*), MORRIS JAMES LLP, Wilmington, Delaware, *Attorney for Defendant, Delaware Electric Cooperative, Inc.*

William D. Sullivan, Esquire, Sullivan Hazeltine Allinson, LLC, Wilmington, Delaware; Michael Brown, Esquire (*argued*), Michael Blumenfeld, Esquire, NELSON MULLINS RILEY & SCARBOROUGH LLP, Baltimore, Maryland, *Attorneys for Third-Party Defendant Nagle Farm Service, Inc.*

**Lugg, J.**

## INTRODUCTION

Bryan Dukes died by electrocution while delivering crushed limestone to the Steens' farm.[1] Emily Coulter, individually, as administratrix, and as next friend to minor children, filed a complaint against Edward Steen, Susan Steen, and Jesse Steen (the "Steens")[2] and Delaware Electric Cooperative, Inc. ("DEC"), the electric company responsible for installing and maintaining overhead electric lines servicing the Steen's farm.[3] The Steens, in turn, filed a third party complaint against Nagel Farm Service, Inc. ("Nagel Farm") seeking indemnification for damages awarded against the Steens.[4]

The Steens filed a Motion for Summary Judgment[5] and a Motion for Partial Summary Judgement,[6] and Coulter Responded;[7] DEC filed a Motion for Summary Judgment,[8] and Coulter responded;[9] and Third-Party Defendant Nagel Farm filed a

---

[1] D.I. 1 ("Compl.") ¶¶ 12, 33.

[2] By stipulation of the parties, "all claims as to Defendant Steen Farms, LLC, [were] dismissed without prejudice" on June 22, 2022. D.I. 40.

[3] Compl.

[4] D.I. 43.

[5] D.I. 185 ("Steen Mot.").

[6] D.I. 183 ("Steen Mot. Partial")

[7] D.I. 213 ("Coulter Resp. Steen Mot. Partial"); D.I. 218 ("Coulter Resp. Steen Mot.").

[8] D.I. 188 ("DEC Mot.").

[9] D.I. 212 ("Coulter Resp. to DEC Mot.").

Motion for Summary Judgment,[10] and the Steens' (as Third-Party Plaintiffs) responded.[11] This is the Court's order addressing the Steens', DEC's, and Nagel Farm's motions for summary judgment.

## BACKGROUND

On November 22, 2019, Dukes and James Dorman, in separate trucks, delivered loads of limestone to the Steens' farm.[12] They arrived and found a concrete pad adjacent to a pole barn; no farm employee was present to direct the delivery. Dorman waited as Dukes called the Steens to determine where to drop the loads.[13] Jesse Steen instructed Dukes to drop the loads on the concrete pad.[14] Unaware that Jesse Steen did not intend to meet them at the pad,[15] Dorman and Dukes assessed the site and waited for more direction.[16] It was raining, the ground was wet, and power lines ran overhead.[17]

After waiting over 20 minutes, Dorman and Dukes initiated an *ad hoc* process to navigate the overhead power lines and sodden ground to drop the lime onto the

---

[10] D.I. 191 ("Nagel Farm Brf."); D.I. 193 ("Nagel Farm Mot.").

[11] D.I. 219 ("Steen Resp.")

[12] Deposition of James Dorman ("Dorman Dep.") at 67.

[13] Dorman Dep. at 61, 68-69.

[14] Deposition of Jesse Steen ("Jesse Steen Dep.") at 17.

[15] Jesse Steen Dep at 16.

[16] Dorman Dep. at 150.

[17] Dorman Dep. at 71-73.

2

concrete pad.[18] Dorman dropped his load without incident. After witnessing Dorman's maneuver, Dukes then backed his truck in and raised his dump trailer to dump the lime onto the pad.[19] As Dukes pulled his truck forward to release the remainder of the lime, the raised trailer contacted the power line running above the Steens' property.[20] Dorman alerted Dukes of the truck's contact with the power line, and Dukes exited his vehicle.[21] Dorman saw Dukes return to the truck, then observed smoke streaming from the tires. After the smoke cleared he saw Dukes on the ground.[22] Dorman called out to Dukes, but he did not respond.[23] Dorman called 911.[24] Emergency personnel arrived and transported Dukes to a nearby hospital where his death was pronounced at 4:41 p.m.[25]

On December 22, 2020, Coulter filed suit against the Steens and DEC, asserting claims for negligence, survival, and wrongful death; Coulter also brought a punitive damages claim against the Steens.[26] Coulter contends the Steens failed to

---

[18] Dorman Dep. at 74-77.

[19] Dorman Dep. at 92.

[20] Dorman Dep. at 92.

[21] Dorman Dep. at 93-95.

[22] Dorman Dep. at 96.

[23] Dorman Dep. at 100.

[24] Dorman Dep. at 101.

[25] Deposition of Det. Paul Taylor ("Det. Taylor Dep.") at 32.

[26] *See generally,* Compl.

3

warn Dukes of the hazardous condition present on their property, including the potential that the power lines would intersect with Dukes' truck.[27]  Coulter alleges that DEC was negligent by failing to install the power lines in a safe manner, failing to provide adequate clearance, and failing to employ adequate safety measures to prevent electrocution.[28]

The Steens filed a Third-Party Complaint seeking indemnification from Nagel Farm.[29]  The Steens maintain that Nagel Farm improperly trained Dukes, and that his improper training resulted in Dukes' creation of a dangerous condition on the Steens' property.[30]

## STANDARD OF REVIEW

Under Superior Court Civil Rule 56, summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[31] On a motion for summary judgment, this Court "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine

---

[27] Compl. ¶¶ 46(a-w).

[28] Compl. ¶¶ 52(a-q).

[29] D.I. 43 ("Third-Party Compl.").

[30] Third-Party Compl. ¶ 12(a-e).

[31] Super. Ct. Civ. R. 56(c).

4

issues of material fact; and (iii) denies the motion if a material fact is in dispute."[32]

Summary judgment will not be granted where there exists a material fact in dispute or if it "seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[33]

**ANALYSIS**

### I. The Steens' Motion for Summary Judgment

The Steens assert, "[a]t the outset, there must be a legal duty/obligation that exists as a matter of law for one to be liable in negligence. Absent a legal duty, the Steens are entitled to summary judgment."[34] The Steens argue that they owed no duty to Dukes because they had no knowledge of, nor would their exercise of reasonable care have revealed, the dangerous condition that led to Dukes' death.[35] Further, the Steens assert, even if a duty did exist, the "open and obvious" nature of the wires relieved them of responsibility.[36] Coulter counters that "it is disputed whether the Steens had knowledge" of the danger their electrical wires posed, and

---

[32] *US Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 2730567, at *17 (Del. Super. Ct. Mar. 31, 2023) (citing *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Ct. Nov. 23, 2021) (cleaned up)).

[33] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962).

[34] D.I. 185 at ¶ 6 (citing *Alcantara v. Cavalier Grp., Inc.,* 2019 WL 4187542, at *2 (Del. Super. Ct. Aug. 23, 2019)).

[35] *See* Steen Mot.

[36] Steen Mot. ¶¶ 7, 9.

5

based on Delaware law, whether the electrical wires constituted an "open and obvious" dangerous condition should be submitted to the jury.[37]

## A. The Steens Owed a Duty to Dukes

Under Delaware law, a landowner "has a duty to employ reasonable measures to warn to protect a business invitee of a condition that poses unreasonable risk of harm if the landowner knows or should know of such condition."[38] A "business invitee" is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of that land."[39] The record establishes Dukes was a business invitee of the Steens and, as such, was "entitled to expect that the premises would be free of any dangerous condition known or discoverable by the possessor of the land."[40]

Delaware follows the Restatement (Second) of Torts.[41] Section 343 of the Restatement imposes liability upon a landowner who:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees; and

---

[37] Coulter Resp. to Steen Mot. ¶¶ 1-5.

[38] *Duran v. Eastern Athletic Clubs LLC*, 2018 WL 3096612, at *2 (Del. Super. Ct. June 7, 2018).

[39] *DiOssi v. Maroney*, 548 A.2d 1361, 1366 (Del. 1988) (citing Restatement (Second) of Torts § 332 (1965)).

[40] *DiOssi,* 548 A.2d at 1366.

[41] *See generally, id.*

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and

(c) fails to exercise reasonable care to protect them against the danger.[42]

The Steens claim they "had no reason to believe this unfortunate accident would occur" and to require them to post warnings would be "duplicative of what was already visible and evident to [Dukes]."[43] Coulter counters that "it is disputed whether the Steens had knowledge of the danger the subject electrical wires posed."[44] In their depositions, Edward and Jesse Steen acknowledged that they had witnessed previous dump truck deliveries to the concrete pad and knew that fully lifted dump trailers generally extended higher than the overhead wires.[45] But the fact that no truck had contacted the wire did not render their property safe. To the contrary, as owners of the property, and witnesses to prior deliveries, they knew how best to safely approach the pad.

Candidly acknowledging their research revealed no cases addressing a similar scenario in Delaware, the Steens direct the Court's attention to *Genaust v. Illinois Power Co.*[46] In *Genaust*, the Illinois Supreme Court commented that "[a] business

---

[42] *Foreman v. Two Farms, Inc.*, 2018 WL 3949294, at *1 (Del. Super. Ct. Aug. 16, 2018) (citing Restatement (Second) of Torts § 343 (1965)).

[43] Steen Mot. ¶ 9.

[44] Coulter Resp. to Steen Mot. at ¶ 1.

[45] Jesse Steen Dep. at 7, 27, 29-30; Edward. Steen Dep. at 36-37, 44-45.

[46] 62 Ill.2d 456 (Ill. 1976).

invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land."[47]  Further, "[t]he potential risk of installing equipment in close proximity to power wires [was] apparent."[48]  Here, both Dukes and the Steens were aware of, or should have been aware of, the risk associated with delivering a load with a dump truck to a pad near overhead electrical wires.  And, while Dukes' concomitant knowledge of the risk—as evidenced by Dorman's description of their studious approach to the task—may impact the Steen's liability, as explained more fully below, it does not eliminate it.

### B. Whether the dangerous condition was "open and obvious" is an issue of fact for the jury.

There exists no duty to warn business invitees of an "open and obvious" danger.[49]  An "open and obvious danger" is one that "create[s] a risk of harm that is visible, . . . is a well-known danger, or what is discernible by casual inspection . . . to those of ordinary intelligence."[50]  It is a danger "so apparent that the invitee can reasonably be expected to notice it and protect against it because the condition itself

---

[47] *Id.* at 469.

[48] *Id.*

[49] *Duran*, 2018 WL 3096612, at *2.

[50] *Foreman,* 2018 WL 3949294, at *1.

constitutes adequate warning."[51] "[T]the general rule [is] that these issues are almost entirely issues of fact" to be submitted to the jury.[52] But, in "very clear cases," the Court may decide the issue as a matter of law.[53] The Steens, of course, argue that this is one of those cases.

Delaware Courts have granted summary judgement based on open and obvious dangers in exceedingly rare circumstances.[54] But, because whether a danger is "open and obvious" is intensely fact-driven, this Court generally tasks the jury with this assessment.[55] No doubt, this is a close case. But the Court finds that the unique circumstances surrounding this tragedy are not so open and obvious to warrant granting summary judgment.

Electrical lines may be inherently dangerous, but "because of the limited visual [cues] presented by a power line, operators have great difficulty accurately judging power lines clearances and avoiding them."[56] Dukes had just witnessed

---

[51] *Duran*, 2018 WL 3096612, at *2.

[52] *Foreman*, 2018 WL 3949294, at *4.

[53] *Duran*, 2018 WL 3096612, at *2.

[54] *See, e.g., Polaski v. Dover Downs, Inc.*, 2012 WL 3291783, at *2 (Del. Aug. 14, 2012) (a curb, "brightly marked with yellow paint, . . . in a well lighted area, and . . . free from damage or debris" provided sufficient notice of a danger).

[55] *Foreman,* 2018 WL 394294, at *1 (ice and snow on sidewalk);. *Duran*, 2018 WL 3096612, at *1 (floor mats with weights in an exercise room); *Jones v. Clyde Spinelli, LLC*, 2016 WL 3752409, at *1 (Del. Super. Ct. July 8, 2016) (space heater in the middle of an office room).

[56] Ex. D to Coulter Resp. to Steen Mot. p. 24, ¶6.

Dorman successfully dump his lime without incident. And the Steens had witnessed other trucks drop lime on the pad on previous occasions. It is for the factfinder to determine whether the lines presented an open and obvious condition for which the Steens had no duty to warn. The Steens' motion for summary judgment is **DENIED**.

## II.    Steen's Motion for Partial Summary Judgment

### A. Coulter's Claim Under the Survival Act

Coulter seeks to recover under the Survival Act for Dukes' "conscious pain and suffering . . . from the time of his injuries to the time of his death."[57] The Steens contend that, because "the only evidence [is that Dukes] was observed unresponsive and lifeless," Coulter cannot make the requisite showing that Dukes "lived and suffered," and summary judgment must be granted.[58] Coulter counters that she "intends to call the medical examiner who performed [Dukes'] autopsy as a witness at trial" and that it would be "premature" at this juncture to conclude whether there exists "a sufficient factual basis" for her claim.[59]

Under 10 *Del. C.* § 3701, Coulter may maintain a personal injury action for Dukes injury.[60] But to do so, Coulter must prove by a preponderance of the evidence

---

[57] Compl. at ¶ 59.

[58] Steen Partial Mot. ¶ 8.

[59] Coulter Resp. to Steen Partial Mot. ¶¶ 3-4.

[60] *Mahaffey v. Baily*, 2001 WL 985089, at *1 (Del. Super. Ct. July 26, 2001).

10

"that conscious pain and suffering existed after the incident and before the death."[61] There must be some "appreciable interval of conscious pain and suffering after the injury."[62] As this Court has explained,

> The plaintiff has the burden of proving the existence of conscious pain and suffering and a mere allegation that the decedent lived and suffered is insufficient where the only record supports a finding of almost instantaneous death. Proof of such pain and suffering as are substantially contemporaneous with death, or mere incidents to it, or as to a short period of insensibility intervening between fatal injuries and death, is not sufficient.[63]

Here, "the record supports a finding of almost instantaneous death."[64] Dorman, the only eyewitness to the incident, testified that when the power line "snapped . . . [he] went back towards the truck and saw [Dukes] lying on the ground."[65] And, when Dorman "was yelling [Dukes'] name," Dukes did not respond.[66] Dorman confirmed that Dukes was not moving at all.[67]

---

[61] *Id.*

[62] *Midcap v. Sears, Roebuck and Co.*, 2003 WL 22451128, at *1 (Del. Super. Ct. Oct. 10, 2003).

[63] *Magee v. Rose*, 405 A.2d 143, 146 (Del. Super. Ct. July 9, 1979).

[64] *Id*.

[65] Dorman Dep. at 96.

[66] *Id*. at 99-100.

[67] *Id*.

11

Beyond the "mere allegation" that Dukes "lived and suffered,"[68] Coulter offers no evidence establishing Dukes death was anything but instantaneous. Coulter's anticipation that the medical examiner "will testify as to the manner and cause of [Dukes'] death"[69] sheds no light on the timing of Dukes' death.

In *Mahaffey*, this Court granted summary judgment where an eyewitness originally "claimed that she heard [Decedent] moaning and that [Decedent] responded when [eyewitness] called out her name."[70] At her deposition, the eyewitness recanted her earlier statements, claiming "she could not be sure" that the Decedent responded.[71] The Court held that the eyewitness' "equivocal testimony [did] not create a genuine dispute concerning a material issue of fact."[72] Here Dorman's testimony is unequivocal and established that Dukes' death was instantaneous. The Steens' motion for summary judgment on Coulter's claims under the Survivor Act is **GRANTED**.

---

[68] *Magee*, 405 A.2d at 146.

[69] Coulter Resp. to Steen Partial Mot. ¶ 3.

[70] *Mahaffey*, 2001 WL 985089, at *2.

[71] *Id.*

[72] *Id.*

### B. Coulter's Claim for Punitive Damages

Coulter, in response to the Steens' Partial Motion for Summary Judgment, stated that she "no longer intends to assert a claim for punitive damages."[73] Unopposed, the Steens' motion for Summary Judgment on punitive damages is **GRANTED**.

### III. DEC's Motion for Summary Judgment

In its motion for summary judgment, DEC contends that it did not owe Dukes a duty under Delaware law and, if it did, Dukes' own negligence caused his death, thus relieving DEC of liability.[74] And, like the Steens, DEC argues that it is not subject to damages under the Survival Act because Coulter cannot prove that Dukes did not die instantaneously.[75]

### A. DEC Owed a Duty to Dukes

DEC contends that because it "could not 'reasonably foresee' the incident," it did not owe Dukes a legal duty.[76] And, DEC avers, Dukes' violation of provisions of 16 *Del. C.* Ch. 74—the Delaware Overhead High-Voltage Safety Act—constitutes negligence *per se* and serves to relieve DEC of liability.[77] Coulter counters that

---

[73] Coulter Resp. to Steen Partial Mot. ¶ 2.

[74] *See generally,* DEC Mot.

[75] *Id.* at ¶ 14

[76] *Id.* at ¶¶ 6-9.

[77] *Id.* at ¶¶ 7, 10.

DEC's installation of power lines on the Steens' property made it "reasonably foreseeable [to DEC] that workers would need to lift their dump trailers near the overhead wires."[78]

"To be held liable in negligence, a defendant must have been under a legal obligation—a duty—to protect the plaintiff from the risk of harm which caused his injuries."[79] This duty is to act as a reasonably prudent person would under the circumstances and protect against "reasonably foreseeable events."[80] The determination of whether a duty exists is "entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined by the court."[81] If no duty exists, "a trial court is authorized to grant judgment as a matter of law."[82]

Coulter asserts that "[w]hen DEC converted the single-phase line to a triple-phase in 2009," it should have been "reasonably foreseeable" to them that dump trailers would be lifted near the overhead wires.[83] Thus, Coulter contends, DEC maintained a duty to those delivering to the property and should have installed the

---

[78] Coulter Resp. to DEC Mot. ¶ 5.

[79] *Pipher v. Parsell*, 930 A.2d 890, 892 (Del. 2007) (quoting *Fritz v. Yeager*, 790 A.2d 469, 471 (Del. 2002)).

[80] *Delmarva Power & Light Co. v. Burrows*, 435 A.2d 716, 718 (Del. 1981).

[81] *Pipher*, 930 A.2d at 892 (quoting *Fritz*, 790 A.2d at 471).

[82] *Id.*

[83] Coulter Resp. to DEC Mot. ¶ 5.

14

safety fuse on the cap that DEC's original plans included.[84]  Of course, it is difficult

assess DEC's knowledge of the Steens intended use of the land beneath the electrical

lines, but the plans preceding the line installation do reveal that DEC intended to

install a safety fuse on the line.  Coulter's expert opined that had DEC installed a

fuse in 2009, as was planned, Dukes would not have suffered a fatal electrocution.[85]

Coulter's negligence claim rests, in part, on this failure.

While the Delaware Supreme Court has not squarely addressed the duty an

electric company owes to those who might come in contact with its lines, in

*Delmarva Power & Light Co. v. Burrows* it approved the following legal instruction:

> An electric company is under a duty to safeguard the public against injury arising from use of its dangerous agency, whether damage arises from its negligence, negligence of others, or from causes over which it has no control, to the extent of exercising reasonable care to correct or remove causes of danger if reasonably foreseeable and known to the power company; however, an electric company is not an insurer and is not liable for injuries unless it is guilty of some wrongful act or omission.

> A power company must anticipate and guard against events which may be reasonably expected to occur, and its failure to do so is negligence, even though power companies may not anticipate the identical injury or incident that occurs.

> The degree of diligence which a distributor must observe in the distribution of electricity is a very high degree of care and due care which must be observed in distribution of electricity [and] requires that

---

[84] Coulter Resp. to DEC Mot. ¶ 5.

[85] Coulter Ex. D, Expert Report.

everything that gives reasonable promise of preserving life must be done regardless of difficulty or expense.

*****

The defendant . . . owes a legal duty toward every person who is liable to come in contact with dangerously high voltage power lines to see that such lines are properly insulated so as to avoid any physical injury upon contact with them at a place where the person has a legal right to be, whether it is for business, pleasure, or convenience.[86]

The Supreme Court found that this instruction "[did] not depart from the negligence standard nor amount to error."[87]  Under the facts presented here, it is reasonable to expect that farm equipment may be operated near the electrical lines.  The plan to include a fuse on the line further evidences DEC's understanding of its responsibilities to those working in the vicinity of the line.

### B. Dukes' Negligence

DEC contends that, even if it possessed a duty to Dukes, his failure to comply with 16 *Del. C.* § 7504B constitutes negligence *per se.*  This statute requires any person working "within dangerous proximity of any high voltage overhead line" to "promptly notify the public utility operating the high voltage line."[88]  DEC asserts— and Coulter does not dispute—that no notice was offered to DEC of the work performed on the Steen farm the day of Dukes' death.

---

[86] *Burrows*, 435 A.2d at 718-19.

[87] *Id.* at 719

[88] 16 *Del. C.* § 7405B.

16

Coulter responds that 16 *Del. C.* § 7405B requires the Steens (the landowner), and not Dukes (a business invitee), to contact the utility company. But the Court need not resolve this disagreement. DEC's argument calls for an assessment of contributory negligence which, in turn, presents a material factual dispute which must be presented to the factfinder.

Where a statute defines an obligation, and a violation of the statute is proven, duty and breach are presumed.[89] But, a finding of negligence *per se* does not preclude a comparative or contributory negligence assessment.[90] If DEC is able to prove Dukes violated 16 *Del. C.* § 7405B and thus was negligent *per se*, it "must nonetheless be demonstrated that [Dukes'] negligence was the proximate cause of [his] injury."[91] And, of course, "disputed issues of foreseeability and proximate cause involve factual determinations that must be submitted to the jury."[92]

DEC contends Dukes' failure to comply with 16 *Del. C.* § 7405B was a proximate cause of his death.[93] Delaware's comparative negligence statute makes clear "the fact that the plaintiff may have been contributorily negligent shall not bar a recovery by the plaintiff or the plaintiff's legal representative where such

---

[89] *Toll Bros., Inc. v. Considine,* 706 A.2d 493, 498 (Del. 1998).

[90] *Prince v. Faretto, LLC,* 2019 WL 5787988, at *2 (Del. Super. Ct. Nov. 6, 2019).

[91] *Duphily v. Del. Elec. Co-op., Inc.*, 662 A.2d 821, 828 (Del. 1995).

[92] *Pipher,* 930 A.2d at 892.

[93] DEC Mot. ¶ 10.

17

negligence was not greater than the negligence of the defendant."[94]  Determining how much, if any, negligence should be attributed to each party "almost always presents a question of fact for the jury."[95]  It does so here.

While the trial court may decide issues of comparative negligence and bar recovery on "rare occasions," this is not one of those cases.[96]  DEC, in 2009, failed to install a safety fuse despite its inclusion in the project plans.[97]  Coulter's expert contends that, had DEC adhered to its plans, the fuse would have prevented Dukes' fatal electrocution.[98]  And neither Dukes nor the Steens alerted DEC of the work in the vicinity of overhead lines—a possible violation of 16 *Del. C.* § 7405B. Deciphering the relative negligence of each presents a question of material fact to be resolved by the factfinder.  DEC's motion for summary judgment is **DENIED**.

### C.  Survival Act

DEC's motion for summary judgment on Coulter's claim under the survivor act mirrors the Steens' and, of course, must suffer the same fate.[99]  As noted above, the only eyewitness, Dorman, unequivocally explained that Dukes' death was

---

[94] 10 *Del. C.* § 8132.

[95] *Helm v. 206 Massachusetts Avenue, LLC*, 107 A.3d 1074, 1081 (Del. 2014).

[96] *Id.*

[97] Coulter Ex. D, Expert Report.

[98] *Id*.

[99] See § II. A. supra at p.8.

instantaneous.  Coulter offers no evidence that Dukes "lived and suffered" after his injury but before his death.  DEC's motion for summary judgment on Coulter's Survival Act claim is **GRANTED**.

### IV.    *Nagel Farm's Motion for Summary Judgment*

The Steens' third party complaint seeks indemnification from Nagel Farm. While workers compensation "exclusivity bars any third-party claims for contribution, a third party tortfeasor may nevertheless recover against an employer in indemnification"[100] in limited circumstances.  The Steens assert that, through an implied covenant, Nagel Farm owed them a duty to perform "work in a workman like and safe manner" and that Dukes' death was the result of a breach of that duty.[101] Nagel Farm argues that it "did not breach a duty to the Steens through an express contractual obligation and the circumstances did not create an implied promise to indemnify."[102]

Nagel Farm compensated Dukes' Estate through Maryland Workers' Compensation.  Under 19 *Del. C.* § 2304, an employer who provides workers' compensation to an employee cannot be sued for negligence.[103]  To the extent the

---

[100] *Karcher v. Restoration Guys, LLC*, 2022 WL 2720887, at *2 (Del. Super. Ct. July 22, 2022).

[101] D.I. 43 at ¶¶ 5, 11.

[102] Nagel Farm Brf. at 10.

[103] 19 *Del. C.* § 2304; *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, 654 A.2d 403, 406-7 (Del. 1995) ("Section 2304 precludes the imposition of joint tort

Steens seek to recover from Nagel Farm as a joint tortfeasor, that claim may not stand.[104] But, "Delaware law recognizes that an implied contractual obligation to indemnify a third party may operate as an exception to Delaware's workers' compensation exclusivity scheme."[105]

In *Diamond State Tel. Co. v. Univ. of Del.*,[106] the Delaware Supreme Court described the "limited circumstances where the relationship between a contractor and an employer implies . . . an obligation" to indemnify.[107] The exceptions "are conditioned on the existence of a contract whereby the employer performs services for the third party on the third party's premises."[108] In the absence of a contractual relationship—express or implied—between Nagel Farm and the Steens, there can be no implied promise to indemnify.[109]

There is no dispute that there was no formal contract between the Steens and Nagel Farm. In fact, the record reveals that the Steens did not have any relationship

---

liability upon an employer in a suit brought by an injured employee against a third party where the employer has paid compensation benefits to the employee.").

[104] *Precision Air*, 654 A.2d at 407.

[105] *Hindinger v. J & M Temp, LLC*, 2023 WL 2292489, at *6 (Del. Super. Ct. Feb. 28, 2023).

[106] 269 A.2d 52, 57-58 (Del. 1970).

[107] *Karcher* at *3.

[108] *Hindinger*, 2023 WL 2292489, at *6 (citing *Diamond State Tel. Co.*, 269 A.2d at 7).

[109] *Diamond State Tel. Co.*, 269 A.2d at 56.

20

with Nagel Farm. The Steens contend that "it is a distinction without a difference that the parties did not arrange the delivery directly."[110] The Steens argue that they "were in a contractual relationship with Nagel Farm Service, Inc. for delivery of lime to the subject site,"[111] and that they "had worked together in the past so often that they were satisfied no contractual formalities were necessary."[112] But Edward Steen testified that he had never done business or contracted with Nagel Farm, had never spoken with anyone from Nagel Farm, does not know any Nagel Farm employees, and had only ever seen Nagel Farm trucks on his property on "the day of the accident."[113] The Steens arranged to have lime delivered by Warwick.[114] "[W]hether or not there exists liability to indemnify a third party depends upon the factual circumstances surrounding the incident."[115] And, the Court must consider the facts and circumstances surrounding the alleged contractual relationship. Here, the record is clear that no express contract existed between the Steens and Nagel Farm.

Nor was there an implied contract. "[A]n implied contract is one inferred from the conduct of the party, though not expressed in words. The parties' intent

---

[110] Steen Resp. 18.

[111] Third-Party Compl. ¶ 4.

[112] Third-Party Compl. ¶ 8.

[113] Edward Steen Dep. at 68-71.

[114] *Id.* at 19-21.

[115] *Diamond State Tel. Co.*, 269 A.2d at 58.

21

and mutual assent to an implied-in-fact contract is proved through conduct rather than words."[116] And, just as an express contract:

> An implied contract requires offer, acceptance, and consideration. There must be a meeting of the minds, and the parties' mutual assent to the contract terms must be objectively manifest or shown. However, naked assertions devoid of further factual enhancement do not support an actionable claim of breach of implied contract.[117]

The record does not support a finding of an express or implied contract between the Steens and Nagel Farms. The Steens contacted Warwick to arrange for the delivery of lime. Warwick, in turn, arranged for the lime to be delivered by Nagel Farms drivers as a "back haul" for a delivery in Pennsylvania. The exceptions creating an implied promise to indemnify "are conditioned on the existence of a contract."[118] In the absence of a contract, the exceptions do not apply. Nagel Farm's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
Sean P. Lugg, Judge

---

[116] *Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 1098 (Del. 2002).

[117] *Doe v. Bayhealth Med. Ctr.*, 2025 WL 1010403, at *10 (Del. Super. Ct. Apr. 4, 2025) (internal citations omitted).

[118] *Hindinger*, 2023 WL 2292489, at *6 (citing *Diamond State Tel. Co.*, 269 A.2d at 57).

22